MOBILE & OHIO RAILROAD CO. v. MRS. SALLIE D. MORELAND.

[61 South. 424.]

CARRIERS. *Passengers. Breach of contract. Punitive damages.*

Where a passenger on boarding a railroad train gave her ticket to the conductor and, on arriving at her destination and seeing that the train did not stop at once, said to the flagman that she had a ticket to that place and requested him to stop the train and allow her to get off, explaining to him the urgent necessity for her doing so, but the flagman refused to stop and in a few moments she stated the same thing to the conductor who also refused to stop and upon her saying that she would see if something else could be done the conductor sneeringly said, "You can sue the company." And

plaintiff was carried on to the next station and furnished transportation back to her destination, after three hours' delay. In such case the refusal of the railroad employees to stop the train was tantamount to a wilful and wanton disregard of plaintiff's contractual rights and entitled her to recover punitive damages.

APPEAL from the circuit court of Wayne county.

HON. J. L. BUCKLEY, Judge.

Suit by Mrs. Sallie D. Moreland against the Mobile & Ohio Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. M. Boone,* for appellant.

The fact in this case, in their legal effect, are practically the same as those in the case of *A. & V. R. R.* v. *Lowery,* in 57 So. 289; and under that authority we are entitled to a reversal of this case.

We contend further that under the opinion of Chief Justice MAYES in the case of *Y. & M. V. R. R.* v. *Hardy,* 55 So. 967, in which he reviewed the law of Mississippi and established thoroughly and clearly the cases in which punitive damages were proper, we think this case ought to be reversed. It cannot be doubted that in running by this station and failing to stop there was no element of wilful or wanton disregard of duty, or any gross negligence; it was the result of a mere oversight and inadvertence, which is held in the *Hardy case, supra,* as not sufficient to sustain a verdict for punitive damages.

And we contend, further, that under that case it was the duty of this conductor to carry the plaintiff on by to the next station and not stop between these stations to put her off; that the mere request or consent of the plaintiff to have the train stopped and be put off would not have justified the conductor in so doing; as was said in the Hardy case: "The law controlling the traveling public is practical and not theoretical; the right of every traveler is often relative and not abstract."

We further contend that this case is controlled by the rule laid down in the *Gill case,* 66 Miss. 39. The witnessess all agree that when this lady first called the attention that she was being carried by her station, the train was some one hundred and fifty or two hundred yards past the depot; and in the Gill case the train had gotten about two hundred or three hundred feet by the station, a very much shorter distance from the station than in the case at bar; and as pointed out in Chief Justice MAYES' opinion in the Hardy case, Gill demanded that the train only stop and let him and his wife off where it was, and this is the request made in the case at bar. Gill interpreted the conduct of the conductor as being angry and insulting, just as the plaintiff in this case interpreted the conduct of the conductor; but in the Gill case the court held that the plaintiff was not entitled to punitive damages; the court further saying in the Gill case that bruskness on the part of the conductor was not such insult for which the employers must be punished where it amounts to no more than it appeared in the Gill case, and we contend that there was just as much insult appearing in the Gill case as is in the case at bar.

From the foregoing, we contend that the first and second assignment of errors is well taken. The first charge granted for the plaintiff is error, because the court submitted to the jury the question as to whether or not the failure to stop the train at Boyce was wilful, when there was no testimony in the case justifying the submission of such a question to the jury, it being clearly established that the failure to stop the said train was a mere oversight on the part of the conductor, and there was no effort made by the plaintiff, through the testimony of any witness, to contradict this statement of the conductor, and there are no circumstances shown in this record that had the effect to, in the most remote way, contradict this statement on this point. And the said charge was further erroneous, in submitting to the jury and authorizing the

jury to find punitive damages, "if the conductor in so re-
fusing made use of language which was insulting
to the plaintiff," leaving out altogether the question as to
whether or not the language was such as ought to insult
the plaintiff, or the necessary effect of which would be in-
sulting to the plaintiff; but leaving the question of insult
entirely to the opinion of the plaintiff, whether that opin-
ion or conclusion was erroneous or justified by the lan-
guage used by the conductor, which cannot be the law.

The second charge granted the plaintiff is erroneous,
for the reason that it informed the jury that if they be-
lieved from the evidence that the conductor offered plain-
tiff any insult in connection with his failure to stop his
train, that they might then allow her damages for mental
anxiety, if any she suffered, by reason of such anxiety;
when the testimony showed, without contradiction, that
there was no insult offered in connection with his failure
to stop the train; and the record is very clear that, if any
insult was offered at all, it was not about the passing the
station without stopping, but was in reply to the threats
of the plaintiff to sue the defendant, and had no connec-
tion whatever with the act of failing to stop the train at
the station; and this was very misleading and erroneous.

The second assignment of errors, as we show in the
foregoing argument, we contend is well taken, as by these
charges the defendant sought to confine the damages in
this case to nominal damages, and to disallow any puni-
tive damages.

The third assignment of errors is well taken, according
to the law given to the jury for the defendant, which we
contend was a correct anouncement of the law applicable.

In the sixth charge for the defendant the court in-
structed the jury that they could not allow anything more
than nominal damages unless they believed from the evi-
dence that the conductor intentionally used sneering re-
marks or words to the plaintiff, and by the seventh charge
for the defendant the court instructed the jury that al-

though they might believe that the plaintiff thought he sneered at her, yet if they thought from the evidence that he did not conduct himself in any manner so as to intentionally insult her, they would find only nominal damages; and in the eighth charge for the defendant, the jury was informed that although the conductor's conversation and manner was interpreted or understood by Mrs. Moreland to be insulting, yet if the jury believed from the evidence that said conductor did not knowingly or intentionally do anything with intent to insult, they would only allow nominal damages; and in the ninth instruction for the defendant the jury was informed that although Mrs. Moreland thought the conductor sneered at her, yet if they believed from the evidence that the conductor did not intend to sneer, they would only allow nominal damages.

We contend that each of the above instructions were pertinent on the question as to whether or not punitive damages should be allowed in this case; that punitive damages could be allowed only in a case where there was intentional wrong done, as is held in all of our cases upon the subject; and that under the evidence in the case at bar the verdict was contrary to the law, as correctly set forth in said charges to the jury.

All of the authorites agree that exemplary or punitive damages are awarded as a punishment for the evil motive or intent with which the act is done, and as an example or warning to others; and that where the act is done without any bad intention, there is no ground under which such damages can be awarded. *R. R.* v. *Hoefich*, 62 Md. 300, 50 Am. Rep. 223; *Y. & M. V. R. R.* v. *Lowery*, 57 So. 289.

Even if the court should disagree with us as to whether or not the question of punitive damages should be submitted at all to the jury in this case, yet we say if such damages were possible in this case, the verdict is excessive and against the overwhelming weight of the testimony.

*Carl Fox,* for appellant.

It is firmly established by the testimony of every witness, including the plaintiff herself, that the refusal on the part of the conductor to stop the train was not at the station of Boyce, but after the train had passed Boyce and was running at a rapid rate of speed btween Boyce and the next station. The request of plaintiff to the conductor was that the train should be stopped between the station of Boyce and the next station south, as in the *Gill case,* 66 Miss. 39.

The evidence, about which there is no dispute whatever in this record, and concerning which there was no issue to be submitted to the jury, is that the conductor, having taken up a number of tickets to Waynesboro overlooked the fact that plaintiff's ticket was for Boyce, thought it was for Waynesboro, and merely through inadvertence failed to stop the train there.

Nothing so far but a case of compensatory damages at most. Then the respective rights, duties and liabilities of the plaintiff and the company shifted. It became the duty of the company to return plaintiff to her station as quickly as it reasonably could. It was not the duty of the company either to stop the train or to back up to the station of Boyce. It was the duty of the plaintiff to accept the situation and it was her right to recover of defendant whatever amount would compensate her under the circumstances for the injury she suffered thereby, taking into consideration, of course, the fact that the negligence of the company made it necessary for her to go to the station of Waynesboro, wait there three hours and return on another train. The testimony, including the plaintiff's, is that the conductor and other servants of the defendant did all and more than the law required of them, after she had passed her station; and she alone testifies but one solitary circumstance to which even she, constitutionally nervous and delicate, angered, suffering with physical weakness and exhaustion and tortured with anxiety about

her grandchild, lingering at death's door, could take exception, in the performance by the defendant company of its duty to return plaintiff safely at the earliest reasonable moment to her home.

In *A. & V. Ry. Co.* v. *Lowry,* the plaintiff recovered punitive damages and it was attempted to show that in a controversy with the plaintiff, who was a passenger upon defendant company's train, the conductor's manner was insulting. Plaintiff testified that the "conductor was very abrupt about it in the way he demanded it" (that is, fare). "It was a very abrupt manner. He demanded that I pay another fare in a very harsh and gruff manner. He looked like he was mad. Talked like that way." The supreme court reversed the judgment, holding that no case had been made out for punitive damages.

In *Railroad Co.* v. *Gill,* 66 Miss. 39, which was approved and followed in *Y. & M. V. R. R. Co.* v. *Hardie,* 59 So. 967, Gill was a passenger on a passenger train and the employee of the carrier negligently permitted a crowd at the station which was Gill's plantation, to board the train and crowd the platform and aisle so that Gill and his wife could not get off. The train started and the plaintiff, Gill, called to a friend to pull the bell cord and the cord was broken. "After the train had gone about two or three hundred feet up, saw the conductor and demanded that he stop the train and allow him and his wife to get off, telling him that he had important business and that his wife was sick"—remarkably like the case at bar. The conductor refused to stop the train just as in the instant case, and at the same time said "you have broken my bell cord. Sit down." Plaintiff testified that this was said in an angry and insulting manner, although he does not state what his manner was, and wherein it was, insulting—remarkably like the case at bar. Plaintiff was carried to the next station and returned on another train in about an hour, paying his own fare returning.

Judge CAMPBELL said: "This is not a case for punitive damages, even on the evidence produced by plaintiff, and

the court erred in not so ruling.'' Therefore the verdict is contrary to the law and the evidence.

*Heidelberg & Heidelberg,* for appellee.

The question is, was there any evidence tending to show a wilful refusal to stop the train at Boyce. The question was for the jury under proper instruction, not for the court to decide.

We insist that even though the train was not at Boyce when the demand was made by the plaintiff, and though it might have been where the conductor said it was, still it was the conductor's duty to stop the train, if the plaintiff demanded it. He said that it would not have delayed the train but a minute or two and that he could easily have reached the next stop on schedule time. Then why was the train not stopped? His refusal to stop it was wilful and laid the defendant liable for exemplary damages.

Mr. Fox, in his brief, criticises the second instruction given to the plaintiff. The language employed by the instruction clearly announced the law on the subject. It does not tell the jury that if they believe from the evidence that if the language used by the conductor was construed by the plaintiff to be insulting that then they would be authorized in inflicting exemplary damages, but it states if the language was in fact insulting to the plaintiff, such damages could be inflicted. If the language was insulting to anybody it was bound to have been insulting to the plaintiff and to no one else. Counsel insist in criticising said instruction that we do not contend that the language itself was insulting but only the tone of voice in which the language was spoken was insulting. In this, counsel is wholly mistaken. We insist that not only the language itself was insulting but that the insult was aggravated by the sarcastic and sneering tone of voice in which it was spoken. What did the conductor mean when he told Mrs. Moreland, weeping as she was at the time

and very much agitated as testified to by her and by O'Dom, that if he were she he would sue the company? Was he giving her fatherly or brotherly advice? He meant evidently the very opposite of what he said. He meant that she was without any cause of complaint whatever against the company and that her evident signs of distress were similated and pretended. Did he really mean to tell the plaintiff that he had treated her wrong and that she had just ground for complaint against the company and that if he were she he would bring a suit against the company? If not, then what did he mean? If he meant the opposite, was such language not insulting, spoken as it was to a woman weeping and almost grieved to frenzy on account of the great danger of the loss of her grandchild? And if spoken with a sneer, as the plaintiff testified it was, was it not doubly insulting?

The defendant's attorneys insist in their briefs that there was nothing wrong in the language nor in the tone of voice of the conductor that was insulting, but it was merely erroneously construed by the plaintiff to be insulting. The court correctly told the jury in the instructions asked and given the defendant that if they believed from the evidence that the language was not insulting, but was erroneously construed by the plaintiff to be insulting, that then the plaintiff would have no right to insist on exemplary damages on account of such alleged insult. It was for the jury and not for the court, under proper instructions, to construe the language and they construed it evidently against the construction insisted upon by the defendant's attorneys.

Mr. Boone in his brief makes the folowing criticism of the second instruction granted to the plaintiff: "The second charge granted to the plaintiff is erroneous for the reason that it informed the jury that if they believed from the evidence that the conductor offered the plaintiff any insult in connection with his failure to stop the train that they might then allow her damages for mental anxiety,

when the testimony showed without contradiction that there was no insult offered in connection with his failure to stop the train, and the record is very clear that if any insult was offered at all it was not about passing the station without stopping but it was in reply to the threats of the plaintiff to sue the defendant, and had no connection whatever with the act of the failure to stop the train at the station." Conceded that the criticism of the instruction was well founded, and yet what harm could there have been from giving such instruction? If there was no evidence upon which to predicate it, then the defendant could not have been injured by the giving of such instructions. The jury is told that if they believe from the evidence that certain facts exist, then they may find for the plaintiff. It is not error for a court to refuse an instruction where there is no evidence upon which to predicate it, but is a harmless error to give an instruction announcing an abstract proposition of law, even though there is no evidence upon which to base the instruction.

But we submit that the instruction was perfectly proper. The jury is told that if they believe from the evidence that if the conductor in charge of defendant's train offered any insult to the plaintiff in connection with his failure to stop the train then they may, in estimating her damages, take into consideration whatever mental anxiety, etc. Was the insult offered not in connection with the failure to stop the train? Was the plaintiff not at the time the insult was offered insisting that the conductor stop the train; and was it not at the time when she was so insisting that the insult was offered?

In the case of *Chicago R. R. Co.* v. *Scurr,* 59 Miss. 456, at page 461 the rule governing the inflection of exemplary damages is also laid down. It is said, "that such damages are permissible only where there has been some element of intentional wrong, or, in the absence of intention, a negligence so gross as to evince a reckless disregard of consequences. This idea is variously expressed by differ-

ent text-writers and judges and sometimes with a multitude of words, but if to the words 'negligence' and 'intention' we add the word 'insult' we will perhaps sufficiently embrace all the states of cases in which damages may be awarded by a jury or sanctioned by a court. Where the negligence of which a defendant has been guilty bears no aspect of recklessness or wilfulness, and is wholly free from any element of insult or rudeness, there is no justification for the imposition of any damages beyond such as will fully compensate for all the injuries actually sustained.''

In the case of *Davis* v. *R. R. Co.,* 95 Miss. 540, it is held that where a train is run over a new line of road in charge of servants not acquainted with the stations thereon and the conductor caused the passenger to leave the train during the night at a place not his destination without accommodations, and as a result the plaintiff became lost in the woods and walked some distance unarmed through a dangerous county to his home that the question of whether the defendant was liable for exemplary damages was properly left to the jury.

In the case of *Wilson* v. *N. O. & N. E. R. R. Co.,* 63 Miss. 352, it was decided that if it was shown that the plaintiff signaled the train to stop, and that such signal was either seen or might have been seen by the employees of the train and was disregarded by them, that the defendant was liable, and that if such employees either wilfully, recklessly or capriciously refused to stop the train the company was liable for exemplary damages. It was also held in said case that where the evidence was conflicting as to whether the signals made were seen or might have been seen by the exercise of reasonable care it was a proper case to go to the jury. Especial attention is directed to the case of *Higgins* v. *L. N. O. & T. R. R.,* 64 Miss. 80.

In the case of *R. R. Co.* v. *White,* 82 Miss. 120, it was held that where the engineer of a passenger train disre-

garded a signal to stop at a flag station, which he saw and understood, and no reasonable explanation of such failure is made, a question of fact is presented to the jury as to whether or not the company is liable for exemplary damages.

It was decided in the case of *R. R. Co.* v. *Mitchell,* 83 Miss. 179, that for a failure to stop the train at a flag station if either the engineer or the fireman saw the signal as the train approached the station and the train was not stopped, the plaintiff was entitled to recover, and that it was within the province of the jury to award punitive damages, provided the failure to stop was either capricious, reckless, malicious, deliberate, wilful or wanton. It will be observed in the last-mentioned case that it was no part of the duty of the fireman to watch for signals or to stop the train, yet the supreme court held that for a failure to stop the train when the signal was seen only by him, the company was liable as much as for the neglect of the engineer. This being true, the defendant in the case at bar is as much liable for the neglect of the flagman to stop the train when requested by the plaintiff as it is for the neglect of the conductor. The two cases are analogous.

It was decided in the case of *Railway L. & P. Co.* v. *Lowery,* 79 Miss. 431, that it was the duty of a street car company to stop its cars at all regular street crossings on a reasonable signal, and that where a car had crossed the crossing twenty or forty feet, a rule of the company forbidding the backing of the cars was unreasonable, and will not justify a refusal to back the car to reach the crossing on a rainy night where the road is very muddy, and that in such case for a failure so to do the company was liable for exemplary damages.

In the case of *Southern R. R. Co.* v. *Kendrick et ux,* 40 Miss. 374, it is decided that where the injury complained of is clearly not attended with any circumstance of insult, of aggravation of feelings, or injury to the person

or property of the plaintiff, or bodily or mental suffering, the jury would be unauthorized in finding exemplary damages, but that the jury was the sole judge of the existence and weight of such facts. In the case at bar, as to whether or not there was any wilful neglect of duty on the part of the conductor or flagman, or as to whether or not there was any insult offered by the conductor, were questions the existence of which were to be determined by the jury and not by the court, and therefore the court was not in error in refusing the peremptory instruction asked by the defendant.

It was decided in the case of *M. & C. R. R. Co.* v. *Whitfield*, 44 Miss. 466, that it was the duty of the conductor upon the request of any passenger to move the train backward or forward so as to enable the passenger to step upon the platform. It was held in the same case that punitive damages were authorized where fraud, malice, gross negligence, oppression, insult, rudeness, caprice or wilfulness are proven.

COOK J., delivered the opinion of the court.

Shubuta and Boyce are two near-by villages, situated on the railroad of appellant. Plaintiff below, appellee here, purchased a ticket at Shubuta, which entitled her to carriage from that station to Boyce, and then embarked upon one of appellant's passenger trains. This ticket was delivered to the conductor of the train. Boyce was a flag station, at which the trains did not stop to take up passengers unless flagged; but tickets were sold from other stations to Boyce, and whether it was a flag station, or a station at which all trains stopped can have no significance in this case, as appellee had the same right to have the train upon which she had taken passage stopped long enough for her to disembark, as she would have had had her destination been a regular stop. When the train reached Boyce, appellee, discovering that she was being taken by her station, immediately informed the flagman

that she had a ticket to Boyce, and asked that the train be stopped. The flagman replied that he would not stop the train. Appellee insisted, telling him that she was anxious to stop in order that she might send her daughter to Shubuta to take her place at the bedside of a grandchild, then dangerously ill. The flagman still declined to stop the train, but leisurely left the coach, apparently in search of the conductor, and soon thereafter the conductor came into the coach, where he found appellee in tears and much distressed. Appellee besought the conductor to stop the train, telling him, also, why she desired to reach her daughter immediately. The conductor also refused to stop the train, because, in his opinion, he would by doing so violate the laws of the state.

Appellee then said that she would see if something else could not be done, and, according to her testimony, the conductor "sneeringly" said, "You can sue the company." Appellee was carried on to the next station, and furnished transportation back to Boyce, after having remained at this station about three hours. It appears from the evidence of the conductor that he could have stopped the train when requested in about one-half minute. The excuse given for failure to stop the train at Boyce was inadvertence and forgetfulness. It seems that the conductor at first denied that appellee had a ticket, but, discovering his error, he finally admitted the fact. In this state of the record, the trial court by its instructions authorized the jury to find exemplary damages. The verdict of the jury was for plaintiff, assessing her damages at five hundred dollars.

The instruction authorizing the jury to find punitory damages is complained of by appellant, and *Y. & M. V. R. R. Co.* v. *Hardie,* 100 Miss. 132, 55 South. 42, 967, 34 L. R. A. (N. S.) 740, 742, is relied on for a reversal. Without commenting on this case, we think it is easily distinguishable from the present case. In that case the passenger demanded that the train be backed to the station,

and the court decided, for the reasons given in the opinion, that she did not have the right to make this demand under the circumstances disclosed by the record. Whether the court correctly announced the law in that case is not now before us, as in this case the passenger merely preferred the reasonable request that she be permitted to get off the train, and she did not even demand that she be put off at the place where the company contracted with her to stop its train long enough for her to alight with safety. The record shows that appellee's rights under her contract of carriage were entirely ignored, and when an opportunity was offered appellant's servants to right the wrong they capriciously and brusquely declined to make amends.

It is insisted that there was an utter absence of evidence to establish any inference of insult, and while we do not concur with appellant's counsel in this contention, we think under the undisputed facts of this case the refusal of appellant's servants to comply with appellee's reasonable demand, courteously made, was tantamount to a wilful and wanton disregard of appellee's contractual rights and defendant's plain duty as a common carrier of passengers.

*Affirmed.*