CITIZENS NAT. BANK OF MERIDIAN *v.* GOLDEN.

(Division B.    March 23, 1936.    Suggestion of Error Overruled, April 20, 1936.)

[166 So. 745.    No. 31943.]

**Wilbourn, Miller & Wilbourn,** of Meridian, for appellant.

510

512

**Lester E. Wills,** of Meridian, and **T. J. Wills,** of Hattiesburg, for appellee.

Argued orally by **R. E. Wilbourn**, for appellant, and by **Lester E. Wills**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Robert Golden, the appellee, brought suit against the Citizens National Bank of Meridian, the appellant, for a rescission of the sale of certain bonds sold to appellee by said bank.

It was alleged in the bill that on July 24, 1929, the appellee, being desirous of investing a small savings, was induced by the appellant, through its agent, Mr. Blanks, acting within the scope of his employment, and in the furtherance of the business of his employer, the bank, to purchase four bonds of the Central Securities Com-

pany, Series C, of one thousand dollars denomination each, and that said bank represented that said bonds were guaranteed by the Maryland Casualty Company and the United States Fidelity & Guaranty Company, both of Baltimore, Maryland, and that, by virtue of said guaranty they were worth the face value, and that said appellee could not lose by the purchase thereof. It was also alleged that said bonds had written in their face that they were guaranteed as to underlying mortgages, by the two above-named companies; that appellee was not versed in the language of the bonds so issued and sold, and the language in the bonds was such as not to be readily understandable by a person not familiar with the handling of bonds; and that, relying upon the representations of the appellant, and believing that said bonds were guaranteed as stated, and having the utmost faith and confidence in said appellant, he purchased the said four bonds for four thousand ninety-five dollars and thirty-two cents. It was further alleged that the appellant knew, or by the exercise of ordinary care and caution should have known, that said representations were untrue, and appellee charges that said representations were untrue, and that it has been explained to him by his attorney that the said casualty companies do not guarantee the payment of said bonds, and that the language in said bond, while intricate and ambiguous, stated that the casualty or guaranty companies guaranteed only the first mortgages, security for the obligations of mortgage companies which are referred to in said bonds. The bill further alleged that appellee, through his attorney, took up the matter with said bank, tendered the bonds back, and asked that he be reimbursed the money, with interest, that had been paid therefor, which was refused by the bank, the appellant here, and that the appellee is entitled, in equity, to rescind said contract, return the bonds, and to have the appellant pay back, with interest, the money paid therefor. The bill then alleged that said bonds were

in the possession of and owned by the appellant at the time it sold same to the appellee, and that but for the faith and confidence in said appellant, he would not have purchased said bonds, and that because of the falsity of the representations, whether intentionally or innocently made, appellee is entitled to rescind said contract and recover the principal sum, with interest, paid for said bonds, as provided for in the bonds themselves.

The appellant bank answered the bill, and admitted the sale of the bonds in the amounts alleged, but denied that said representations charged were made as an inducement to their purchase; denied that any representations as to the bonds being guaranteed by said companies, or that the appellee could not lose by purchasing, were made; alleged that the bonds had written on their face the exact extent of such guarantee; denied that the appellee was not versed in the language of the bonds so issued; and denied that the language in the bonds was not readily understandable by a person not familiar with the handling of bonds. The answer denied that the appellee relied upon representations made by the appellant in the purchasing of the bonds. The appellant set up that the appellee has no right, in equity, to rescind said contract, return said bonds, and to have the appellant turn back to him the price therefor with interest. It is further stated in the answer that the appellant had no knowledge, information, or belief, other than that given in the original bill, as to when the appellee secured any advice from his attorney, and that such allegation was peculiarly within the knowledge of the appellee, and that the appellant could not have any personal knowledge thereof, and that therefore the appellant denies all information, knowledge, or belief as to whether or not appellee, through his attorney, took up this matter with the appellant and tendered back the bonds, and asked that he be reimbursed the money with interest that he had paid for said bonds, as soon as he was advised that they

were not guaranteed. It is further set up in the answer that the appellee was charged with notice of every fact recited in the face of the bonds from the moment of his purchase, and appellant denied that the appellee made any effort to rescind the purchase of said bonds as soon as he was legally advised that they were not guaranteed. It was further stated that the appellee is barred from rescinding because of the fact that since the purchase of said bonds he has had knowledge of the extent of their guaranty, and that he had delayed, until two and one-half years after being so charged with said information, to take up the matter of rescission, or offer to return said bonds. By amendment, the appellant set up that it was not liable under and by virtue of the provisions of paragraph 7 of section 5136 of the Revised Statutes of the United States, as amended by Act Cong. Feb. 25, 1927, sec. 2, 44 Stat. 1226, sec. 2 (see 12 U. S. C. A., sec. 24, par. par. 7).

In support of the allegations of the bill that the appellee bought bonds at the instance of the appellant instead of putting his money on interest, Robert Golden, appellee, testified as follows:

"Q. You say that Mr. Blanks suggested bonds instead. What bonds did he suggest? A. He said that he had some bonds that were guaranteed, Central Securities bonds guaranteed by the United States Fidelity and Guaranty Company and a casualty company in Maryland, and if I wanted to I could cash them in when I needed money. That it would only cost me about half a point if I kept them a month and cashed them in. But if I had a time certificate I would lose the interest.

"Q. Did he have the bonds at that time? A. Yes, he went in the vault and brought out four bonds.

"Q. I will ask you if you made a purchase of these bonds? A. I did, I gave him a check for them.

"Q. Now, what induced you to make that purchase of

the bonds? A. Mr. Blanks' statement that they were guaranteed by this insurance company. . . .

"Q. Tell the court whether or not you made a statement to Mr. Blanks about the bonds? A. I did. I told him the circumstances. I was not interested in bonds."

He further testified as follows:

"Q. Tell the court whether or not Mr. Blanks read these bonds to you, one of them? A. Mr. Blanks read a clause somewhere stating that they were guaranteed, as to principal and interest by this insurance company. While he was making out the invoice for them he asked me to look and see if all the coupons were in there. That is as far as I looked into the bonds."

The appellee offered in evidence a letter received from Mr. Blanks, the cashier of the Citizens National Bank of Meridian, acknowledging certain items sent for deposit, and asking if appellee would be interested in investing these funds in "some good, guaranteed bonds," and stating that he would endeavor to see the appellee within the next few days regarding the matter. Golden testified as to an interview with Mr. Blanks, after default in the payment of premium coupons, in which he called attention thereto, and Mr. Blanks stated that it would be straightened out and that it was just a question of time, as follows:

"Q. Now had the subject of those bonds been discussed between you and Mr. Blanks? A. Yes, I had the bonds with me. He said they would get it straightened out, says they are guaranteed by the insurance company and it is just a question of time.

"Q. Did he make any statement to you about selling the bonds? A. He said he sold to employees of the agent of the company on the strength of them being guaranteed by his company.

"Q. Who was he? A. Agent for the insurance company, the United States Fidelity and Guaranty Company, I believe.

"Q. He said he sold to employees of the agent of the company? (Objected to.) He said he sold an employee of Mr. Williams a bond? (Objected to as being incompetent.) After that, did you receive this letter from Mr. Blanks, after you made that visit? A. Yes."

Appellee introduced other witnesses who each testified to like representations made to them by Mr. Blanks in connection with the purchase of similar bonds of said Central Securities Company. These conversations by Mr. Blanks with these other witnesses were had out of the presence of Golden, and were unknown to him at the date he purchased the bonds. The admission of the testimony of these witnesses was objected to by counsel and is assigned as one of the reasons urged for the reversal of this cause.

At the conclusion of all the testimony, the chancellor, at the request of the parties, filed his findings of fact and of law in accordance with the contentions of the appellee, rendering a decree in his favor.

It is first argued that the court erred in holding that the federal statute referred to was not controlling and conclusive in favor of the appellant bank, and that the case of Awotin v. Atlas Exchange National Bank, 295 U. S. 209, 55 S. Ct. 674, 79 L. Ed. 1393, is decisive and controlling.

In the case of Bullard v. Citizens' National Bank, 173 Miss. 450, 160 So. 280, after the main opinion had been handed down, a suggestion of error was filed calling our attention to the Awotin Case, supra, and we held that it did not apply. 162 So. 169. The court there said: "The Awotin Case dealt with a statute there involved as affecting the power of a bank to make contracts of the character there prohibited, and to incur any liability in dealing with such transactions by contract. It was not intended by the court, as we understand it, to hold that the statute prohibited the bank from being liable in actions of fraud and deceit, or in actions of tort, involving mis-

representations of facts in selling its securities, or disposing of such property which it had acquired for its own use, or as agent for others. It is inconceivable to us that the federal statutes should prohibit a person dealing with a bank, and who has been misled by false representations, from holding the bank liable for such false representations as would render other persons and corporations liable in actions for fraud or torts. The suit here is for fraud and deceit, or fraudulent representations, by which a customer was led to make an investment on the faith of such representations. We do not believe the federal court will construe the statute to prohibit recovery in such cases.''

Our view remains unchanged after the very able argument presented on this appeal.

In the case of Smith v. First National Bank, 268 F. 780, 783, decided by the Circuit Court of Appeals of the Eighth Circuit, in 1920, prior to the decision in the Awotin case, the Circuit Court of Appeals said: ''This is an action for deceit. The trial court, jury having been waived, ruled for defendant on these grounds: that, as such transactions were ultra vires and, both impliedly and actually, known by Smith to be such, no action for deceit in connection therewith could be maintained; that the only basis of recovery in such ultra vires transactions would be for money had and received, but that such action was not here maintainable, because the bank had received no money nor profit; that the conduct of Smith in relation to the contract, under which he obtained the loan papers from the Minneapolis bank, amounted to a waiver and an estoppel in favor of the bank. The loan would have been ultra vires if made by the bank, because of the amount involved, or, if it was a brokerage transaction, because national banks have no power to engage in the brokerage business. This was both impliedly and actually known by Smith, and he also knew that this loan was of such character. But he is not here trying to enforce

the contract. This action is in tort for deceit. It is based upon the claim that Smith sent money to the bank in reliance upon the representation by an officer of the bank that it had a certain loan·for sale, when such statement was known by said officer to be false. Whatever Smith did was with the knowledge that the bank had for years engaged in making and brokering real estate loans. He had, for years, bought such loans from the bank, two of which were in excess of the bank's lending power, and one of which was larger than thirty thousand dollars. In all of these loan sales to him, Kittel had conducted the negotiations for the bank. The bank had thus held itself out to him as having such loans for sale and as negotiating them through Kittel. It is, therefore, responsible, in tort, for the acts and statements of Kittel in such negotiations. If Kittel knowingly stated falsely that the bank had such a loan for thirty thousand dollars, and if Smith parted with his money relying upon that statement, and sent that money to Kittel as an officer of the bank, then there was a fraud upon Smith, for which both Kittel and the bank were liable." See, also, Salter v. Williams et al., 244 F. 126, 155 C. C. A. 554.

The United States Supreme Court refused to review the case of Smith v. First National Bank, supra. See 254 U. S. 655, 41 S. Ct. 218, 65 L. Ed. 460.

As to the contention of appellant that the court erred in admitting the testimony of other witnesses than Golden as to similar transactions and representations made out of the hearing of Golden, we think such testimony was admissible; that wherever fraud is involved, similar representations made to other parties by the same person about the same subject, near the same time, are admissible for the purpose of showing an intention to deceive. In the case of Nash Motor Co. v. Childress, 156 Miss. 157, 125 So. 708, 709, in dealing with the admission of evidence of established fraud, it was held that evidence showing that the seller was in the habit of setting

back speedometers on secondhand automobiles was admissible; the court there saying that: "One of appellant's main contentions is that the appellee had no right to rely on the speedometer and the appellant's representations as to the mileage of the car; that the appellee should have used his experience and judgment, and should have acted upon the appearance of the car and its performance; and where one party to a contract makes representations as to a fact, the party to whom such representations are made cannot rely thereon without an investigation. A purchaser has a right to rely upon the representations of a seller as to facts within the latter's knowledge, and the seller cannot escape responsibility by showing that the purchaser upon inquiry, might have ascertained that such representations were not true. . . . [Citing authorities]. Representations with reference to the mileage of a car constitute representations of a material fact. It is a matter of common knowledge that machinery, of all kinds, will depreciate in value from wear and tear, and especially is that true of an automobile. . . . It is a well-established rule that other similar frauds may be shown in order to show the intent with which the representations complained of were made. In all controversies involving questions of fraud, a wide range of evidence is necessarily allowed, for it is seldom that fraud can be the subject of direct, positive evidence" (citing authorities).

In the case of Lizana v. Edwards Motor Co., 163 Miss. 266, 141 So. 295, it was held that setting back speedometers on automobiles to deceive customers constitutes fraud, and that material representations of fact by a seller ignorant of their truth also constitutes fraud, and the seller must make his statement good.

In the case at bar, the appellant, in trying to sustain his contention that the evidence of these other bond buyers was not admissible, cites the case of Rex Motor Co. v. Dupont, 132 Miss. 504, 96 So. 684, 685. In that case

the court not only admitted testimony about conversations by an agent who made the sale, but also as to conversations of other agents with other people, in no way connected with the transaction, and the court said: "At the trial the appellee testified to facts in support of the averments of his special plea, and thereupon he offered two witnesses, who, over the repeated objections of appellant, were permitted to testify that various agents of the corporation, including the agent who had sold the stock to appellee, made the same or similar representations to them and thereby induced them to purchase stock of the corporation . . . and, on appeal, the admission of this testimony is assigned as error. We think the admission of this testimony was manifest error. The witnesses were permitted to testify about conversations with other agents of the corporation concerning contracts with which the appellee was in no way connected. None of the representations made to these third parties were made in the presence of or communicated to the appellee, and we think the admission of this testimony was highly prejudicial to the appellant, and that the error was not cured by an instruction granted to appellant that the appellee could not avail himself as a defense to the suit of any statements made to other parties by the agent of the company which were not communicated to him or made in his presence and upon which he did not act in purchasing the stock."

The distinction between the cases of Nash Motor Co. v. Childress, supra, and Rex Motor Co. v. Dupont, supra, is that in the first-named case the statements were made by one agent to various persons. In the Rex Motor Co. v. Dupont Case, the representations shown were made by several different agents to various persons apart from the person affected in the suit. That was not done in the case at bar, where the representations made to other bond buyers by the same agent were introduced, and we think the repeated statements of the agent here involved were

admissible for the purpose of establishing fraudulent representations. Blanks, it is shown, represented the bank, and he denied making any false representations. He testified that the bonds did not contain any statement that they were so guaranteed, and that he knew this.

The chancellor was the judge of the weight and worth of the testimony, and the issue being fraud, or involving a fraudulent representation, it was competent evidence and same was admissible.

The case of Mississippi Power Co. v. Bennett, 173 Miss. 109, 161 So. 301, is authority for the principle that in cases involving fraudulent representations or misrepresentations of material facts, a party is not charged with the duty of examining paper he buys to see the terms until he finds, by actual knowledge, that the representations made are untrue. In this case a considerable period of time was involved, and the court held that a man may rely upon statements of fact made by the seller, and that the seller who makes fraudulent statements that may be relied upon by a purchaser is liable to such purchaser when he obtains actual knowledge of the fraud.

There are many assignments of error involved in this case, but I do not believe it is necessary to take up further space in discussing them.

We have reviewed the chancellor's finding of facts and law and find no reversible error therein, and his judgment will be affirmed.

Affirmed.