WILBORN *v.* BALFOUR, et al.

Nov. 16, 1953

No. 38950 43 Adv. S. 44 67 So. 2d 857

W. H. *Fisher*, and *Vincent W. Vorder Bruegge*, Memphis, Tenn., for appellant.

*Chatham & Walker,* Hernando, for appellees.

McGehee, C. J.

On August 1, 1951, Sam Balfour, a mentally incompetent, now deceased, suing by next friend, and his wife Edna Balfour, both aged and infirm Negroes, and residents of De Soto County, Mississippi, filed this suit against the appellant, W. C. Wilborn, a white man of Memphis, Tennessee, to have declared to be a deed of trust a certain warranty deed, absolute in form, purporting to have been executed by both of the complainants in favor of the defendant on the 8th day of May, 1951, conveying to him their 101-acre farm in De Soto County, but which deed of conveyance was signed as to both names of the alleged grantors by the complainant Edna Balfour, and at a time when her husband, Sam Balfour, was about 78 years of age, and was sick and his mental faculties impaired to such an extent that he was incapable of executing a valid conveyance.

Insofar as the record shows Sam Balfour, owner of the land, was not advised that such a conveyance had been executed at any time prior to his death on November 4, 1951. Neither he nor his wife appeared before the officer who took the acknowledgment. The purported conveyance, together with a purported power of attorney, simi-

larly executed, were taken to the officer for acknowledgment by A. V. Balfour, son of the purported grantors, and by one Van Pelt, a Negro real estate agent of Memphis, who is alleged by the complainants to have been the agent of the defendant, W. C. Wilborn, and who is alleged by the defendant to have been the agent of the complainants in procuring the execution and delivery of the said instruments to the said defendant.

The purported deed recited a cash consideration of $2,000 for the land which the trial court found, on conflicting evidence, to be reasonably worth $7,500 at the time of the execution of the said two instruments of writing. It was shown that there was an indebtedness due and owing to T. P. Flinn, Jr., Executor of the Estate of T. P. Flinn, deceased, in the sum of $1,272.50, secured by a mortgage or deed of trust on the land in question; that defendant, upon receipt of these instruments of writing through said Van Pelt, delivered to the said real estate agent one check for the amount of the indebtedness due T. P. Flinn, Jr., Executor, payable to the latter, and one check for $519.74 payable to Van Pelt and the complainant Sam Balfour; that the check for the indebtedness of $1,272.50 was delivered to the said executor, who thereupon cancelled and satisfied of record the mortgage or deed of trust held by him as security for the same; that the other check of $519.74 was endorsed by Edna Balfour in the name of her husband Sam Balfour, and was endorsed and cashed at a local bank by the said Van Pelt, who paid unto A. V. Balfour the sum of $375, with which to complete the making of a crop on said land during that year, as alleged tenant of the purported grantee W. C. Wilborn, defendant herein, and the remainder of the proceeds of said check was retained by Van Pelt as his alleged fee from the complainants for procuring a purchaser for the land and obtaining a certificate of title thereto for the purchaser, according to the testimony of the defendant, who further testified that he deducted

$202 from the consideration of $2,000 to satisfy an indebtedness from Van Pelt to him upon the claim of Van Pelt that he was entitled to also retain said amount as part of his alleged fee from the grantors for selling the land.

But according to the testimony offered on behalf of the complainants, the two checks were to represent the proceeds of a loan in the sum of $1,792.24 obtained by Van Pelt from the defendant, W. C. Wilborn, as he stated to them, and to be secured by a deed of trust on the land, with the indebtedness repayable over a period of five years, pursuant to the representations of Van Pelt as to the nature and character of the instruments then purportedly executed by the complainants in favor of the defendant.

The bill of complaint sought to have the court declare the deed of conveyance to be a deed of trust, and to cancel the deed of conveyance as being void, both on the ground of the manner of its execution and because of the representations of Van Pelt as to the nature and character of the instrument which the complainant Edna Balfour had been induced to execute on behalf of the complainant Sam Balfour and in her own behalf as his wife, the title of the land being invested in the complainant Sam Balfour alone. The bill of complaint recognized liability on the part of the complainants for the consideration actually paid therefor by the defendant.

The original bill of complaint was filed in the name of Sam Balfour and his wife Edna Balfour, on the First day of August, 1951, as aforesaid, and did not seek the recovery of any damages as originally drawn and filed. However, after the filing of the answer and cross-bill of the defendant W. C. Wilborn on November 24, 1951, averring that he had obtained a warranty deed, accompanied by the purported power of attorney from the complainants to the said Van Pelt, as the alleged agent of the complainants for the sale of the land, and had purchased the same

in good faith, and under which cross-bill he sought to have himself declared to be the owner of the land in question and to have the bill of complaint dismissed, and which cross-bill contained a prayer for general and special relief, if mistaken in the relief prayed for, the complainants obtained an order of revival of the suit on March 13, 1952, and obtained on June 28, 1952, leave to amend the original bill of complaint so as to sue for damages, both actual and punitive, in the sum of $5,000 in favor of the heirs at law of Sam Balfour, deceased, including the widow Edna Balfour and their six adult children, among whom was the son A. V. Balfour, who had on May 14, 1951, executed a rental agreement in favor of the defendant W. C. Wilborn, agreeing to pay as rent one-third of all of the agricultural products raised on the land for the year 1951, as alleged in the cross-bill of the defendant, and which rental agreement specified that the land being rented was the same land that had been purchased by the defendant from the original complainants on May 8, 1951.

It appears from the evidence that the son A. V. Balfour had actively participated in the negotiations between his mother, Edna Balfour, and Van Pelt which resulted in the execution of the instruments of writing hereinbefore referred to, but he, as a witness, corroborated the testimony of Edna Balfour to the effect that Van Pelt represented the instruments to be a deed of trust on the land to secure the funds with which to pay off the prior deed of trust in favor of T. P. Flinn, Jr., Executor, and for the completion of the crop being grown on the land by A. V. Balfour, who lived with his father and mother during the year 1951; that A. V. Balfour further testified that he accompanied Van Pelt in calling upon the officer to take the acknowledgment of his father and mother to the instruments of writing in question, and that neither of the purported grantors were present; and that he later signed the rental agreement in favor of the defendant

W. C. Wilborn on the assurance made to him that upon repayment of the indebtedness the purported grantors could keep the land, the actual possession of which was never surrendered by them other than by his executing the rental agreement to the defendant under the circumstances hereinbefore stated.

It is conceded that A. V. Balfour, acting on behalf of his father and mother with whom he lived, as aforesaid, first learned through a friend and acquaintance that Van Pelt, the real estate agent in Memphis, could probably assist them in obtaining a loan with which to pay off the indebtedness to T. P. Flinn, Jr., Executor, becoming due on May 28, 1951, and also with which to enable A. V. Balfour to complete his crop on the land during that year; that hence Van Pelt was contacted in Memphis accordingly, with the result that he came down into De Soto County and inspected the land for this alleged purpose.

Thereafter, the defendant also visited and inspected the land, in company with Van Pelt, prior to the execution and delivery of the two instruments of writing in question. However, he testified that he had theretofore informed Van Pelt that he was not interested in making a loan on the land, but that he was willing to buy it; that Van Pelt had later reported to the defendant, prior to the inspection of the land by the latter, that the original complainants had decided to sell; and that it was after this inspection by the defendant that he agreed to pay the consideration recited in the deed as the purchase price therefor.

The said A. V. Balfour testified that he was present when the defendant inspected the land and that Van Pelt told the witness, in the presence of the defendant, in substance, that "Mr. Wilborn here is the man that I am going to borrow the money from," and that nothing was then said about the defendant intending to buy the land, and that when Van Pelt later returned with the two instruments of writing to be executed, he represented that

the instruments consisted of a deed of trust on the land as security for the money. Also, Edna Balfour testified that Van Pelt assured her that what she was to sign was a deed of trust; that there was no need of her taking the time to read the papers, and that if she did take the time to do so, the bank at Hernando, in De Soto County, would be closed before they could get the checks cashed; and that relying upon said representation, she signed her name and that of her husband, Sam Balfour, to the papers; whereas the defendant testified that the instruments of writing, which appeared to have been duly executed, were delivered to him by Van Pelt before the latter came to Hernando to deliver the checks. The defendant admitted that he did not get the certificate of title from the local attorney at Hernando until after the transaction had been closed.

It was further shown by the testimony of A. V. Balfour that he later received notice to come to the office of the defendant at Memphis and sign the rental agreement, and that he went there and informed the defendant that the grantors had not intended to sell the land, and also related to the defendant the substance of the conversation that the witness says was had with Van Pelt prior to and at the time of the execution of the instruments in question; that thereupon, the defendant stated that Van Pelt was merely his (defendant's) agent, and that he had bought the land; and that the defendant then said he would sell it back to them for $3,000 so that the grantors could keep the land. The defendant denied having made this statement to A. V. Balfour, but did claim that he told him that he would not let anyone else have the land, and would sell it back to the grantors.

Upon this conflicting testimony, together with the uncontradicted testimony that Sam Balfour had not signed the deed of conveyance and was sick in both mind and body to such an extent that he knew nothing about the transaction, the chancellor set aside and cancelled the

deed of conveyance and gave a personal decree against the heirs at law of Sam Balfour, deceased, in whose names the cause had been revived, as aforesaid, and which decree was for the sum of $1,792.24, representing the amount of the two checks hereinbefore mentioned. The decree did not fix any lien upon the land in favor of the defendant to secure the repayment of said amount. It was further adjudged that the defendant should pay to the then complainants the sum of $3,025, as both actual and punitive damages, representing the sum of $25 advanced by the grantors, or on their behalf, as expense money to Van Pelt; the sum of $1,000 to cover the attorney's fee which all the complainants had agreed to pay their attorney for conducting this suit; and the sum of $2,000 as punitive damages.

Of course, the defendant was entitled to be subrogated to the right of T. P. Flinn, Jr., Executor, whose deed of trust had been paid and satisfied out of the money paid by the defendant as for the deed of conveyance, and was entitled to a decree against the land for the repayment of the said sum, together with a lien for the amount of the check of $519.74, the chancellor having found and adjudged that the defendant was entitled to recover these sums of money so advanced as a loan but to obtain the deed. However, if the chancellor was correct in adjudging that the defendant was liable to the then complainants for the sum of $3,025 as actual and punitive damages, the defendant would be entitled to take credit on the said decree for the said $1,792.24, and in such event the error committed by the court in not fixing a lien against the land for this latter amount would be harmless error.

In finding that the said Van Pelt was the agent of the defendant in perpetrating this unconscionable fraud on the original complainants when he obtained a warranty deed instead of a deed of trust for a loan by representing that the deed was merely a deed of trust, the chancellor took into consideration the following additional facts:

That as shown by the proceedings introduced over the objection of the defendant in other causes in the chancery courts of Tunica and De Soto Counties wherein the defendant was a party litigant, the said Van Pelt was involved in the negotiations under similar circumstances to those disclosed in regard to the transaction here in question.

For instance, in Cause No. 6213 in the Chancery Court of Tunica County, styled James Alexander, Complainant v. W. C. Wilborn, Defendant, the complainant borrowed $2,400 from the defendant on 60 acres of land of the value of $6,000 or more and had agreed to repay the loan at the rate of $600 per annum in five equal annual installments, and it so happened that the complainant had executed a warranty deed, instead of a deed of trust, reciting a cash consideration of $3,000, which the defendant claimed was brought to him by Van Pelt thus already executed, and for which he was only willing to pay $2,400, even though he took annual installment notes aggregating the $3,000 recited as consideration in the deed. In his answer and cross-bill the defendant undertook to recover $825 claimed by him as the first year's alleged rent and other charges. The court found that it was the intention and purpose of the parties that the conveyance, although absolute in form, was intended as a mortgage or deed of trust to secure the loan of $2,400, repayable over a period of five years at six per cent per annum, so far as the grantor was concerned, and he entered a decree accordingly.

In Cause No. 7052 of the Chancery Court of De Soto County, styled Ella Brown Mack, et al., Complainants v. W. C. Wilborn, Defendant, the said complainants alleged that they owed an indebtedness of $1,200 to one D. B. Bridgforth on 51 acres of land, and made an agreement with the defendant by which he would furnish the money to pay off this indebtedness and for which he was to be reimbursed over a period of five years at $350 per year,

making a total sum of $1,750; that they did not intend to sell the land but that the defendant took a warranty deed therefor reciting a consideration of $10 and other valuable consideration; and that they did not discover until shortly prior to the filing of their suit that they had parted with the legal title to the land and that the defendant was claiming that they were merely tenants thereof. It was shown by the testimony in the present suit that the same Van Pelt participated in that transaction, and that the defendant Wilborn conveyed the land back to Ella Brown Mack, et al., resulting in a dismissal of the suit upon motion of the complainants.

That according to the proceedings in Cause No. 6214 of the Chancery Court of Tunica County the complainants, George Pickens and wife, who were Negroes, had sued the defendant, W. C. Wilborn, to have a warranty deed declared to be a deed of trust, and the same old story is alleged therein to the effect that the defendant Wilborn, acting through Van Pelt, as his own agent instead of the agent of the borrowers, had loaned the complainants $1,765 and instead of taking a deed of trust to secure the indebtedness they were induced to sign the warranty deed reciting a consideration of $1,850 on land alleged to have been worth $4,000. This case has not been finally disposed of, and the proceedings therein were introduced only for the purpose of showing that the defendant Wilborn had sufficient information as to the activities of Van Pelt in procuring deeds from Negroes in favor of the said Wilborn, and of the complaints in regard thereto, to put him on notice that the said Van Pelt was perpetrating unconscionable frauds as an established course of dealings with innocent victims.

It was further shown by the proceedings in Cause No. 7310 in the Chancery Court of De Soto County, styled W. C. Wilborn, Complainant v. Pompie Brown, et al., Defendants, that the complainant undertook to foreclose a deed of trust on 49 acres of land for an alleged indebt-

edness of $1,100 evidenced by six promissory notes, the first of which was for $100, due the first year, and five notes due one each year thereafter in the sum of $200 payable to bearer, at six per cent per annum from date, whereas it was contended by the defendants that the said Van Pelt represented to them that the notes were in the aggregate sum of $604. The proof disclosed that the defendants had already paid $805 thereon as principal and interest at the time of the filing of the suit by the complainant, W. C. Wilborn, to foreclose his deed of trust, and that he was claiming a balance of $774.51. The court held that the defendants owed the complainant no further sum and rendered a decree accordingly. The defendant, W. C. Wilborn, testified in the suit now before us that he purchased these notes in the principal amount of $1,100 from Van Pelt in good faith.

■■■ In our opinion these proceedings in other cases were correctly held to be competent to show that the defendant had had sufficient dealings with Van Pelt in similar transactions to the one here involved to put him on notice and inquiry as to whether or not the original complainants Sam Balfour and his wife, Edna Balfour, had knowingly executed a warranty deed for a recited consideration of $2,000, conveying to the said Wilborn their 101-acre farm which the chancellor found on conflicting testimony to be of the value of $7,500. When he went to inspect this land, on which the supposed grantors then resided, he did not contact either of them to ascertain whether or not they were really intending to sell their farm at that price. His former dealings with Van Pelt, and the knowledge which he had gained thereby of Van Pelt's fraudulent transactions, should preclude him from now asserting that he was an innocent purchaser for value of the land in question.

■■■ We are of the further opinion that the proof in the case at bar was sufficient to clearly establish that Edna Balfour, in cooperation with her son, A. V. Balfour,

did, in fact, constitute Van Pelt their agent to procure a loan of $1,792.24 on the land in question to be secured by a deed of trust and repayable over a period of five years; but that if it be true that the defendant W. C. Wilborn did, as he testified, inform Van Pelt that he was unwilling to make a loan but that he would buy the land, and did thereafter inspect the same and supply Van Pelt with the warranty deed for execution by Sam Balfour and his wife in favor of the said Wilborn, for a consideration of $2,000, and did then, as he testified, deliver the deed and the two checks hereinbefore mentioned to the said Van Pelt for the purpose of securing the execution and delivery to him of the deed in question, he thereby constituted Van Pelt his own agent for the purpose of procuring the warranty deed instead of the deed of trust which instrument Van Pelt represented to the Balfours to be a deed of trust at the time of the execution of the same. Moreover, without regard to whose agent Van Pelt was, the defendant could not become an innocent purchaser of an instrument on which Sam Balfour's name had been forged, at the instance of said agent or otherwise.

And we have reached the conclusion, for the reasons hereinbefore stated, that the chancellor was amply warranted in finding that the warranty deed was obtained through the fraud of Van Pelt, while acting as the agent of the defendant, and that therefore the defendant is in no position to retain the fruits of this fraudulent transaction.

As to the competency of the court proceedings which involved other similar transactions, negotiated by Van Pelt to the intended benefit of the defendant herein, see Jones on Evidence, Vol. 1, Section 142, p. 251, and Section 143, p. 253; Nash Motor Company v. Childress, 156 Miss. 157, 125 So. 708; Citizens National Bank v. Golden, 175 Miss. 508, 166 So. 745; Citizens National Bank v. Allen, 176 Miss. 157, 167 So. 627; Citizens National Bank v. Pig-

ford, 176 Miss. 517, 166 So. 749; and 24 Am. Jur., Section 270, p. 109.

On the question as to the allowance of the attorney's fee and other punitive damages, it was held in an action at law in New Orleans J. & G. N. R. Company v. Albritton, 38 Miss. 242, that in cases, proper for the infliction of exemplary damages, the jury in estimating those damages may take into consideration as a part thereof the reasonable and proper charges of the attorney for conducting the litigation. In Yazoo & M. V. R. Company v. Consumers' Ice and Power Company, 109 Miss. 43, 67 So. 657, it was held in an action at law that it is the general rule that attorney's fees should not be recovered as part of the damages, unless the wrong or injury complained of is connected with some circumstance of aggravation or malice; and that it is the rule in Mississippi that attorney's fees can be awarded in cases in which exemplary damages are given.

In 19 Am. Jur., Equity, Section 125, p. 125, dealing with the question of "Recovery of Damages in Equity," it is said: "Exemplary or punitive damages will never be awarded, it seems, the theory being that the complainant, by having applied to a court of equity, must be deemed to have waived the claim to recover other than compensatory damages," citing Karns v. Allen, 135 Wis. 48, 115 N. W. 357, 15 Ann. Cas. 543, Annotation: 15 Ann. Cas. 547.

In 30 C. J. S., Section 72, p. 426, the rule is stated to be as follows: "Damages recoverable in equity as incidental relief are ordinarily limited to compensatory damages, and as shown in Damages Section 117, equity as a rule will not award exemplary or punitive damages." Then when we go to Section 117 in Damages in 25 C. J. S., p. 709, we find: "In Equity. While punitive damages have been allowed in a suit in equity, usually, although compensatory damages may be allowed as incidental to other relief, as shown in C. J. S., Title Equity, Section 72, also 21 C. J., p. 141, note 57, p. 142, note 63, exemplary or

punitive damages cannot be awarded.'' To support the foregoing statement of the text, numerous decisions are cited, including those from Arizona, Alabama, Colorado, New York, Oklahoma and Texas, which recognize that it is not a function of a court of equity to assess punitive damages in the absence of express statutory provisions, and it will assess actual damages only as ancillary to equitable relief.

In the case of Bush, et ux v. Gaffney, 84 S. W. 2d 759, which was a suit in equity, the Court of Civil Appeals of Texas said: ''This suit was essentially one for rescission upon the ground of fraud, and not a tort action for the recovery of damages for fraud.'' In that case the Court further said: ''The trial court did not, by the terms of the judgment, allow any recovery for exemplary damages, despite the finding of the jury of the sum of $5,000 therefor.'' In the course of its opinion, the Court further stated: ''A court of equity is a court of conscience, but not a forum of vengeance. It will make restitutions but not reprisals. It will fill full the measure of compensation, but will not overflow it with vindictive damages.''

The cases of Railroad Company v. Moreland, 104 Miss. 312, 61 So. 424; Kroger Grocery & Baking Co., et al. v. Harpole, 175 Miss. 227, 166 So. 335; and Sovereign Camp, W. O. W. v. Boykin, 182 Miss. 605, 181 So. 741, were all tort actions at law. It appears that in the caption of the latter case as reported in the State and Southern Reports there appears the words ''Appealed from the Chancery Court of Smith County. Hon. E. M. Lane, Chancellor.'' But nothing is said in the opinion about the appeal being from a court of equity, and the opinion recognizes that a jury had found from the evidence that a grossly unjustifiable fraud had been committed, and that punitive damages could be awarded in the discretion of the jury. We judicially know that Hon. E. M. Lane was the Circuit Judge in Smith County in 1938, when that case

was tried; he has never been a regular chancellor, and the report of the case does not show him to have been a special chancellor in that case. Morever, he could not serve as chancellor while he was circuit judge.

The other Mississippi decisions relied upon by the appellee are Kalmia Realty Insurance Company, et al. v. Hopkins, 163 Miss. 556, 141 So. 903, and Cooper v. U. S. F. & G. Company, et al., 186 Miss. 116, 188 So. 6, both of which involve the allowance of attorney's fees, and held in effect such fees were not recoverable as actual damages, but only in such cases as would justify the infliction of punitive damages. The fees were not allowed on either of those appeals here.

In other words, no decision of our Court has been called to our attention in the briefs of counsel, nor do we know of any where attorney's fees and other punitive damages are allowable in equity in this State, except when to do so is either expressly conferred or necessarily implied by the provisions of a statute, such as in divorce and alimony suits, and upon the dissolution of injunctions, and other cases where such authority is derived from a statute, or in suits on contracts providing therefor. We know of no instance where attorney's fees and other punitive damages have been allowed upon the cancellation of an instrument of writing on the ground of fraud in its procurement.

 The decree appealed from must be affirmed as to the cancellation of the purported warranty deed from Sam Balfour and wife to the appellant, W. C. Wilborn; reversed as to the failure to allow the appellant, Wilborn, a lien on the land involved in the amount of $1,792.24, which amount was found due him against the heirs-at-law of Sam Balfour, deceased, in whose names the suit was revived; affirmed as to the fixation of this amount of recovery, as a personal decree against the heirs-at-law of Sam Balfour, deceased, in whose names the suit had been revived, there being no cross-appeal or assignment

of errors to challenge their personal liability therefor; and the decree is also reversed as to the allowance of $3,025 damages, on the ground that $1,000 thereof as attorney's fee could not have been allowed except as a part of the punitive damages, and the court being of the opinion that such damages were improperly allowed in a court of equity, for the reasons hereinbefore stated, even assuming, but not deciding, that the case may have been a proper one for the infliction of punitive damages in an action at law.

As to the $25 which was paid to Van Pelt as expense money or for an inspection fee, we are of the opinion that this was a proper charge, whether the transaction represented a loan or amounted to a sale; that the cause should therefore be affirmed in part, reversed in part, and remanded for the enforcement of the lien in the sum of $1,792.24 in favor of the appellant, Wilborn, together with the legal rate of interest thereon since the 8th day of May, 1951, and on such terms in favor of the appellees as the chancellor may find to be just and reasonable; and that the cost of this appeal is hereby assessed one-half against the appellant and one-half against the appellee. The appellant is not entitled to a division in the assessment of the costs in the trial court for the reason that he had filed an answer and cross-bill seeking to enforce the deed of conveyance which was fraudulently obtained and had filed the same prior to the amendment of the bill of complaint whereby actual and punitive damages were sought by the complainants.

Affirmed in part, reversed in part, and remanded.

*Lee, Arrington, Ethridge* and *Lotterhos, JJ.,* concur.