258 So.2d 237 (1972)
Dan CARL and L. Lamar Beacham
v.
Aubrey D. CRAFT and Billy S. Craft.
No. 46531.
Supreme Court of Mississippi.
February 15, 1972.
*238 Creekmore & Beacham, Jackson, for appellants.
Waller & Fox, Jackson, for appellees.
GILLESPIE, Chief Justice:
On August 21, 1969, Aubrey D. Craft and Billy S. Craft (Craft) executed a deed of trust to L. Lamar Beacham (trustee) for Dan Carl securing a $15,000 note which evidenced the balance of the purchase price of real property. The note was payable in annual installments of $2,000 plus interest. The trustee claimed breach of contract not to commit waste and began foreclosure proceedings. Craft filed suit in the Chancery Court of Hinds County against Carl and Beacham for an injunction and for damages. A preliminary injunction was issued enjoining the sale. Upon a hearing on the merits, the court made the injunction permanent and ordered Carl and Beacham to pay Craft $500 for expenses, etc., incurred "as a direct and proximate result of the wanton and unconscionable acts of the defendants." Carl and Beacham appealed. We affirm the action of the court in making the injunction permanent and reverse and render on the $500 judgment rendered against Carl and Beacham.
The note contains the following provision for attorneys' fees:
It is agreed that if default should be made in the payment of any installment, as and when due, as herein provided, the entire balance owing on this note shall, at the option of the holder hereof, become immediately due and payable, and if not paid upon demand therefor and this note is placed in the hands of an attorney for collection, the maker, or makers, agree to pay a 15% attorney's fee.
The deed of trust contains the following provisions with reference to waste, attorney's fee, and trustee's fee:
Eighth. It is further agreed that grantors will commit no waste on the property conveyed herein, . ..
Ninth. It is distinctly understood and agreed that a failure by the grantors to pay any one of the above notes or installments *239 of principal, or the interest as it shall become due, or to do or perform any of the above agreements, shall cause the entire indebtedness to fall due and payable at the option of said beneficiary, or beneficiary's assigns, and shall fully empower the said beneficiary or beneficiary's assigns to have the trustee, or any successor in said trust herein, to execute his trust, and said beneficiary or beneficiary's assigns shall not be required to declare such acceleration in writing, or give notice of it.
......
Thirteenth. The attorney's fees provided for in the above described notes and the trustee's fee provided for in this deed of trust are hereby made liens on the above described property, and the grantors hereby promise to pay the same should they become due under the terms of the said notes and this deed of trust.
Out of the proceeds arising from such sale or sales, the cost and expense of executing this trust, including a 15% trustee's fee, which is hereby agreed to be a reasonable trustee's fee, a reasonable attorney's fee shall first be paid; ...
On August 5, 1970, Craft demolished the building on the property securing the deed of trust. Although Craft contends he had what amounts to implied authority to demolish the building, for the purposes of this opinion it is assumed that Craft committed waste on the property. At that time there was no default in the payment of the indebtedness secured by the deed of trust. The note and deed of trust were in the possession of Beacham, Carl's attorney, who retained them after execution and recordation. Upon learning of the destruction of the building on October 31, Carl immediately called Beacham and instructed him to take charge of the matter and collect the money owing on the note. The following Monday morning, Beacham dictated to his secretary a notice of foreclosure and she typed it. At about 10 a.m. the same day, Beacham called Aubrey D. Craft and told him of Carl's call and that he (Beacham) would proceed immediately to foreclose unless the entire amount of principal, interest, attorney's fees, and other fees provided by the documents were paid. Craft told Beacham he would get in touch with him. Billy S. Craft secured a cashier's check from a local bank, payable to Danny Carl, for $13,136.50, the balance of the principal owing on the note plus interest, and tendered this check to Beacham at 3 p.m. on the same day, November 2, 1970. Beacham refused to accept the check and demanded the additional sum of $1,970.19 for attorney's fee. The tender and refusal of the principal and interest were repeated twice. Beacham published notice of foreclosure and this lawsuit followed.

1.

DID THE CRAFTS INCUR AN OBLIGATION TO PAY ATTORNEY'S FEES?
The first sentence of the thirteenth paragraph of the deed of trust states that the deed of trust secured the attorney's fees provided in the note and the trustee's fee provided in the deed of trust. Reading the note and deed of trust together, we conclude that the obligation to pay attorney's fees is determined by the provisions in the note, and the obligation to pay a trustee's fee is determined by the provisions of the deed of trust. The note provides for an attorney's fee if default be made and "if not paid upon demand therefor and this note is placed in the hands of an attorney for collection." Demand was made as required by the note and the full amount owing was tendered promptly. The obligation to pay a fifteen percent attorney's fee did not accrue because the entire debt was tendered upon demand therefor.

*240 2.

DID THE CRAFTS INCUR AN OBLIGATION TO PAY A TRUSTEE'S FEE?
We assume, without deciding, that under the ninth paragraph of the deed of trust, when the mortgagor commits waste on the property, the beneficiary is not required to declare acceleration of the indebtedness or give notice of it.[1]
Tender of principal and interest owing on the note had been made and refused before the trustee began foreclosure proceedings by posting and publication of foreclosure notice. The deed of trust provides that "out of the proceeds arising from such sale or sales," the trustee's fee shall be paid. This is the measure of the obligation to pay a trustee's fee. There could be no sale because tender of the full amount due under the terms of the note was made before foreclosure proceedings began. The deed of trust does not provide for the payment of a trustee's fee where, as here, the trustee did some work preparing for foreclosure [by dictating the foreclosure notice] before the mortgagor tenders the full amount due under the note. In sum, a trustee's fee is not provided for in this deed of trust where the debt is paid [or tendered] prior to the beginning of foreclosure proceedings by posting and publication of notice of sale. We hold, therefore, that no obligation arose to pay a trustee's fee under the facts and the provisions of the deed of trust.

3.
Carl and Beacham contend that the Crafts did not come into equity with clean hands because they wrongfully converted to their own use the furniture in the apartments on which Carl had a lien and otherwise violated the covenants of the deed of trust by committing waste on the property. The chancellor found for Craft on this issue and we cannot say he was manifestly wrong.

4.
Carl and Beacham contend that no valid injunction ever issued because Mississippi Code 1942 Annotated section 1352 (1957) provides that when an injunction, obtained to stay sales under deeds of trust, has been dissolved, damages at the rate of five percent of the debt shall be included in the cost awarded. The preliminary injunction bond was $500. The chancellor construed the amount in controversy as being $1,970.19, because the principal and interest of the note amounting to $13,136.50 was paid into the registry of the court at the time the suit was filed, and, therefore, the $500 was sufficient because it was more than five percent of the amount in controversy. This question is moot since the court made the injunction permanent and the question of the assessment of damages on the bond will not occur.

5.
Finally, Carl and Beacham contend that the trial court erred in rendering a money judgment against them in the sum of $500, which was awarded, as stated by the chancellor, because of the wilful, wanton and unconscionable acts of the appellant Beacham. We are of the opinion that the chancellor erred in this respect. As a general rule, there can be no recovery as damages for the cost and expenses of litigation, *241 including attorney's fees. City of Laurel v. Bush, 238 Miss. 718, 120 So.2d 149 (1960). No statute or other authority has been cited as justification for the awarding of damages of $500 or any other sum in this case. We are of the opinion that the finding that Beacham's actions were wilful, wanton, and unconscionable was not justified under the evidence. Moreover, the chancery court may not award punitive damages. Monsanto Company v. Cochran, 254 Miss. 399, 180 So.2d 624 (1965).
We reverse that part of the decree of the trial court awarding Aubrey D. Craft and Billy S. Craft a money judgment of $500, and render judgment here for Carl and Beacham on that issue. In all other respects the decree of the chancellor is affirmed.
Affirmed in part and reversed in part.
JONES, PATTERSON, INZER and ROBERTSON, JJ., concur.
NOTES
[1] We find it unnecessary to decide this question and therefore pretermit considering it. See Thomas v. Fidelity Mutual Life Ins. Co., 196 Miss. 222, 15 So.2d 915 (1943). Also a serious question arises whether the provisions in the ninth paragraph of the deed of trust excuses the declaration and notice of acceleration because the mortgagor commits waste as distinguished from default because of failure to pay according to the terms of the note or the failure to do something affirmatively required by the deed of trust such as providing insurance on buildings.