370 So.2d 1348 (1979)
GULF STEAMSHIP COMPANIES-INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (GSC-ILA) PENSION PLAN AND AGREEMENT AND DECLARATION OF TRUST, and thomas S. Millette, Administrator,
v.
Dewayne POLK.
No. 51028.
Supreme Court of Mississippi.
May 16, 1979.
Mize, Thompson & Blass, Henry F. Laird, Jr., John C. Ellis, Gulfport, for appellant.
Reid & Associates, Floyd G. Hewitt, Jr., Biloxi, for appellee.
*1349 EN BANC.
SUGG, Justice, for the Court:
Under the terms of a collective bargaining agreement effective October 1, 1956, certain employers and two local unions of the International Longshoremen's Association agreed, among other things, to institute a pension plan and trust for the benefit of the employees covered under the collective bargaining agreements.
In 1958 the GSC-ILA Pension Plan and Trust (hereafter Plan) was created pursuant to the terms of the collective bargaining agreement. The Plan is operated by a Board of Trustees and is financed by employer contributions which are held by the Board in accordance with the powers and duties set forth in the Plan.
While covered under the Plan, Dewayne Polk was injured in an industrial accident on November 26, 1968. Based on his 1968 injury, on December 20, 1973, the Appeals Council of the Social Security Administration retroactively awarded Polk a total and permanent disability rating. Polk was also awarded $46,600 Workmen's Compensation benefits based on his disability resulting from the 1968 injury.
Polk filed applications for a disability pension on May 26, 1971 and another on April 24, 1975. After Polk filed his second application, the Board discussed and considered his application on numerous occasions. The minutes of the Board reflect that, from May 20, 1975 until March 31, 1977, Polk's application was discussed by the Board fourteen times but the Board neither denied nor approved his application.
During this time Polk was represented by different attorneys and lengthy correspondence was carried on between Polk's attorneys and the attorneys for the Board. On October 1, 1975, the attorney for the Board requested Polk's attorney to furnish proof of the year or years that Polk received Workmen's Compensation benefits in order for the Board to make an adequate and final determination relative to Polk's application. The information was furnished by Polk's attorney by letter dated October 20, 1975.
On May 21, 1976 the attorney for the Board wrote Polk's attorney that he would recommend to the Board that Polk was not eligible for pension benefits because Polk had less than 15 years service and because Polk had returned to work during the years 1970-71 and 1972-73. During the interim, Polk changed attorneys and his new attorney filed a bill for specific performance on April 26, 1977, against the Administrator and the Board. Polk sought recovery of $11,200 benefits accrued to April 1, 1977, and for $175 monthly disability benefits after April 1, 1977. Polk also sought attorneys' fees in the amount of 40% of the benefits. The Administrator and Board answered and raised the affirmative defenses that Polk did not meet the 15 year qualification, and that he had returned to his employment.
The chancery court awarded Polk $11,200 benefits accrued to April 1, 1977, and directed the Board to pay $175 for each additional month thereafter, together with 40% attorneys' fees and interest from the date of the decree. The Administrator and Board appealed and assign as error: (1) Polk was not permanently and totally disabled, (2) Polk was not qualified under the express terms of the Plan for a disability pension, and (3) Polk was not entitled to recover attorneys' fees.

PART I
The trustees of the Plan first contended that the evidence did not show that Polk was permanently and totally disabled.
Article 5, sections 3 and 4 of the Pension Plan provide:
Section 3. In any case where disability or sickness or injury, whether incurred on or off the job, may affect any employee's right to a pension, such disability, sickness, or injury must be substantiated to the satisfaction of the Board. In the event of disagreement by the Board, a competent physician or physicians, appointed by the Board, shall make final determination with respect to such disability, sickness, or injury. The employee, upon request of the Board, must submit *1350 to an examination by any physicians selected by the Board, which shall pay for the cost thereof and any expenses incident thereto. A former employee receiving a pension due to disability under this Plan, must, upon request of the Board, submit to an examination to determine whether he is eligible for continuance of such pension. If any employee or former employee shall refuse to submit to any examination properly requested hereunder, he shall not receive or continue to receive a pension due to disability, or shall not be deemed to have suffered sickness or injury, whichever the case may be.
Section 4. In lieu of Section 3 above, the Trustees shall have the right to rely on the determination of the Social Security Administration for the definition of "total and permanent disability." (Emphasis supplied).
After Polk's first application was filed, he presented his first social security disability check dated January 3, 1974, to establish that he was rated totally and permanently disabled by the Social Security Administration.
Section 4 provides that, in lieu of the requirements of Section 3 the Board may rely on the determination by the Social Security Administration. In this case, the Board did not select a physician, did not request Polk to submit to an examination by a physician selected by it; therefore, we conclude that it elected to rely on the determination of the Social Security Administration as authorized by Section 4.
The evidence showed that Polk had received a total and permanent disability rating from the Social Security Administration, and in addition, the answer of defendants admitted this fact. Further, the Board did not show that it had requested Polk to submit to an examination of a physician selected by the Board. We therefore conclude that the court was correct in finding that Polk was totally and permanently disabled.

PART II
The first affirmative defense relied on by the Board was that Polk had not been employed in the industry a minimum of 15 years as required by the Plan. This defense is not well taken because the 15 year requirement was not adopted until 1973 and applied only to employees injured on or after October 1, 1972. At the time Polk was injured in 1968 an employee who had been employed in the industry for a period of not less than 10 years, who had worked an average of not less than 300 hours per year, and who became permanently and totally disabled qualified for disability payments. Polk met these requirements so we affirm the chancellor's holding that Polk met the length of service requirements of the Plan.
The second affirmative defense is based on Article 7, Section 2 which follows:
The pension of any pensioner, other than a pensioner receiving a pension due to total and permanent disability, shall cease as of the date of hire if the pensioner is reemployed in the industry, and shall resume the first of the month following his reestablishment of eligibility in accordance with the provisions of the Plan. In the case of a pensioner receiving a pension due to disability, if he is found to be no longer disabled, or if he engages in gainful employment, other than for purposes of rehabilitation on a nominal wage basis, his pension due to disability shall cease.
Polk returned to his employment during the contract year October 1, 1970 to September 30, 1971, and worked a total of 17.75 hours in the twelve-month period. This work was performed after the first operation on his back and before the second operation on his back. Polk said he returned to work during this period because his doctor told him he was able to work. Polk also returned to work during the contract year October 1, 1972 to September 30, 1973, and worked a total of 282.50 hours. Polk's reason for returning to work during this later period was that he had no income and his family needed support. He testified *1351 that he worked in pain all during this period and his fellow employees covered for him during this period of time.
Polk's first application had not been approved during this second period of work and he was not drawing any disability pension from the Plan, neither had he received his total and permanent disability rating from the Social Security Administration.
In our opinion the quoted section does not bar Polk from recovering on his disability incurred in 1968; however, if his total and permanent disability ceases, the Board may terminate the disability pension under the provisions of Section 2 which provides that if a pensioner is found to be no longer disabled, or if he engages in gainful employment, other than for purposes of rehabilitation on a nominal wage basis, his pension due to disability shall cease. We therefore conclude the chancellor properly held that Polk was not barred from receiving his disability pension under the quoted section.

PART III
The Board also contends that the court erred by allowing an attorney's fee to Polk. Polk contends that the allowance of attorneys' fees was proper under the principles announced in Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1978). Veal has no application because Veal was a suit in circuit court for punitive damages which were awarded and the award was affirmed by this Court. This is a suit in chancery and ordinarily punitive damages may not be awarded in a suit in chancery. Carl v. Craft, 258 So.2d 237 (Miss. 1972); Monsanto Company v. Cochran, 254 Miss. 399, 180 So.2d 624 (1965).
Polk also contends that he was entitled to an attorney's fee under the provisions of the Employee Retirement Income Security Act (ERISA) enacted by Congress in 1974. 29 U.S.C.A. Sections 1001, et seq. Section 1132(a)(1)(B) authorizes a civil action by a participant or beneficiary to recover benefits under the terms of this Plan. Both state courts of competent jurisdiction and district courts of the United States have concurrent jurisdiction of such action under Section 1132(e)(1). Attorneys' fees may be allowed in the discretion of the court under Section 1132(g).
Section 1144(a), (b)(1) provides that the subsection, of which Section 1132 is a part, shall not apply with respect to any cause of action which arose before January 1, 1975. Polk's cause of action arose before the effective date of the act; therefore, the provision authorizing allowance of an attorney's fee does not apply in this case.

CONCLUSION
We affirm the allowance of disability benefits,[1] but reverse the allowance of attorneys' fees.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
All Justices concur.
NOTES
[1] The decree directing the Board to pay future monthly benefits was not questioned and is therefore not before the Court for consideration. National Old Line Insurance Co. v. Brownlee, 349 So.2d 513 (Miss. 1977).