431 So.2d 454 (1983)
TIDEWAY OIL PROGRAMS, INC., Dave Gammill, Tideway Energy Group, Inc., and Tideway Energy Limited Partnership,
v.
S. Barnett SERIO, Sr., Individually and on Behalf of all other Persons Similarly Situated.
No. 53626.
Supreme Court of Mississippi.
April 20, 1983.
Rehearing Denied May 25, 1983.
*455 Heidelberg, Woodliff & Franks, Kenneth L. Franks, Glenn Gates Taylor, Harry E. Neblett, Jr., Jackson, for appellants.
Handy, Fitzpatrick, Gwin, Blough & Lewis, Lucien C. Gwin, Jr., Natchez, for appellee.
En Banc.

PART I
BROOM, Presiding Justice, for the Court:
Oil and gas interests of lessees and their assignees are at issue in this class action appeal from the Chancery Court of Adams County, the Honorable Frank W. Walden, chancellor. S. Barnett Serio, Sr., brought this action in October, 1980, charging that defendants, Tideway Oil Programs, Inc., Tideway Energy Group, Inc., Miller Oil Purchasing Company, Dave Gammill, and Tideway Energy Limited Partnership 1977-2, breached their fiduciary duty owed Serio and the other members of a class he represented. Serio's complaint charged that this fiduciary duty arose out of the relationship between the class members and the defendants as "co-tenants" and "joint venturers" in certain oil and gas leases covering a 480-acre block of land located near Larto Lake, Catahoula Parish, Louisiana. Members of the class were alleged to be Serio, G.G. Cornwell, and all of the persons comprising the Tideway Oil Limited Partnership 1975-1 and the Tideway Oil Limited Partnership 1975-2.
Serio charged that as a result of the class's relationship to the defendants as co-tenants and joint venturers, the defendants were under a duty to convey proportionate interests in leases obtained covering lands adjoining the 480-acre unit in which defendants and complainants held interests as co-tenants. Serio's bill sought to compel the *456 defendants to execute certain assignments, and sought other mandatory injunctive relief, accountings, actual and punitive damages, attorneys' fees, etc. General and special demurrers were filed by the defendants but overruled by the chancellor, who also denied the defendants' motion for interlocutory appeal. Two Justices of this Court then granted an interlocutory appeal pursuant to Mississippi Code Annotated § 11-51-7 (Supp. 1982). The bill charges the parties are "joint venturers." This on its face would require evidentiary proceedings prior to a determination of whether the law of "joint venture" applies rather than disposing of the case by demurrer.
Appealing from the chancellor's decision overruling the general and special demurrers below, appellants/defendants Tideway, et al., argue, inter alia: (1) the Adams County Chancery Court has no subject matter jurisdiction; (2) there is no equity on the face of the complaint: the complaint fails to state a cause of action, and complainant attempts to enforce the rights of other parties; and (3) venue of this suit is not proper in Adams County. These three issues are discussed here in PART I of this opinion, and the issue of punitive damages is discussed in PART II. Other issues not reached in either PART I or PART II are left for decision in the appropriate lower court after the presentation of proof.
The following facts are alleged in the pleadings: Tideway Oil Programs, Inc. (TOPS), initiated the formation of two limited partnerships in 1975 (Tideway Oil Limited Partnership 1975-1 and Tideway Oil Limited Partnership 1975-2). TOPS was named the managing partner in both of these limited partnerships. During the same period of time, Joseph J. Ring, III, as an agent and employee of TOPS and its parent corporation, Tideway Energy Group (another defendant), acquired various oil, gas and mineral leases covering approximately 480 acres in the Larto Lake, Catahoula Parish, Louisiana, area. These leases were subsequently assigned in varying percentages of ownership to appellee Serio, the 1975-1 and 1975-2 limited partnerships, and others. Language in the complaint charges:
The leasehold owners as joint venturers and partners proceeded to test the leasehold, and upon discovery of oil in paying quantities, to develop the area by drilling additional wells.
As a result of these efforts, five producing wells were completed on the 480-tract between June 7, 1976, and October 8, 1978.
During 1977, an operating agreement naming TOPS as operator of the unit was circulated among the various interest owners in the property. According to the complaint:
While this agreement was being circulated for execution, Defendants were fraudulently, collusively, and in breach of the fiduciary and confidential relationship which they occupied with their co-owners, partners and joint venturers, acquiring adjoining and adjacent acreage without the knowledge of Complainants and to the exclusion of Complainants. The operating agreement was, therefore, obtained fraudulently by Defendants and is void as a result thereof.
The operating agreement, signed by appellee Serio and attached to the complaint, provides:
The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating the Unit Area. Accordingly, the lien granted by each party to Operator in Section 9 is given to secure only the debts of each severally. It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render them liable as partners. (Emphasis added).
Serio contends in his complaint that this agreement "fraudulently and contrary to the customs and usage of the industry sought to limit complainants' interests to the original leases." On the adjoining acreage acquired (leased) by defendant TOPS, seven producing oil wells were drilled. Serio *457 alleges it was a breach of TOPS' fiduciary duty to refuse to convey to Serio, et al., their proportionate interests in the leases on the adjoining property obtained by TOPS. To Serio's complaint, defendant TOPS interposed a general and special demurrer raising as grounds the above stated arguments which are now before this Court.
First argument of appellants is that the instant case is in substance an effort to adjudicate title to property in Louisiana, and that Mississippi courts lack subject matter jurisdiction.
At the outset we note that Serio's case is basically for the breach of a duty. Therefore, it is evident that, in spite of the fact that one of the remedies sought by Serio is that the chancery court compel conveyance (assignments) of land interests in another state, his suit is not a suit adjudicating title. In Pomeroy, Equity Jurisprudence, § 1318 (5th ed. 1941), the text writer makes the following observation:
§ 1318. Remedies in Personam beyond the Territorial Jurisdiction.  The power to act in personam, through their remedies, is still held by all courts of equity, ... Of this nature must always be the remedies when the subject-matter either real or personal property, is situated beyond the territorial jurisdiction of the court, in another state or country. The jurisdiction to grant such remedies is well settled. Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted.
Id. at 898-99 (Footnotes omitted).
This view was first adopted by this Court in Sutton v. Archer, 93 Miss. 603, 46 So. 705 (1908). In Koehring Co. v. Hyde Construction Co., Inc., 254 Miss. 214, 178 So.2d 838 (1965), this Court, quoting from 20 Am.Jur.2d, Courts § 119 (1965), noted that:
Jurisdiction in rem is right where the decision sought is of a nature to directly affect real property. A court of one state has no jurisdiction to establish, to pass, or to quiet title to real property situated in another state, or to make any other decision directly affecting real property located in another state, or the title to that property. A decision in personam may be rendered by the court of a state with regard to a res which is not situated within the state if the decision merely obliges a person subject to its jurisdiction in personam to dispose of the res, or to refrain from disposing of it, in the manner prescribed by the decision ... . (Emphasis supplied).
254 Miss. at 237-38, 178 So.2d at 847.
Who owns "Blackacre" is not in issue here. The question is: Have the defendants breached a duty to convey "Blackacre" rendering them liable for damages or specific performance?
Appellants have confused two qualitatively distinct considerations which are raised when a lawsuit contains issues centering on real property located in another state. It is true that a Mississippi court cannot try title to Louisiana property. Zorick v. Jones, 193 So.2d 420 (Miss. 1966). Nonetheless, if the suit is not one to try title but is a suit against the person of the defendant, the question is not one of subject matter jurisdiction by virtue of the location of the property, but rather is a question of the choice of law to be applied by the court having jurisdiction over the litigants' persons.
We addressed such a question in Spragins v. Louise Plantation, Inc., 391 So.2d 97 (Miss. 1980), which was a suit for specific performance of a contract for the sale of lands located in the state of Arkansas. We noted that the threshold question to be resolved was the question of whether Arkansas law or Mississippi law was to govern the parties' substantive rights. Nonetheless it should be noted that the law of either jurisdiction could be equally applied *458 by a Mississippi court. The instant case not being a suit to adjudicate a question of title, Mississippi courts have subject matter jurisdiction.
As may be gleaned from the foregoing discussion, appellant TOPS' "jurisdictional" assignment of error is in actuality a "choice of law" assignment of error. Appellant TOPS apparently has failed to recognize that the fact that Louisiana law may apply in the instant case does not preclude such law being applied by a Mississippi court. In ascertaining which state's substantive law is to be applied in a choice of law problem, this Court adopted the "center of gravity" doctrine in Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645 (Miss. 1968). This "center of gravity doctrine" or, in other words, "the most significant relationship test" was the test we applied in Spragins.
In applying this test to the Spragins fact situation, this Court looked to such questions as whether the policies of each state were in conflict, the location of the property in question, the location of the execution of the agreements, the intent of the parties that lex loci apply since there was no "choice of law clause", and the place where the deeds themselves were recorded. Based upon all of the foregoing facts, in Spragins we concluded that Arkansas law should be applied.
As appears from the above application of the "center of gravity" doctrine, proper application of this rule requires the ascertainment of various facts that bear upon the relationship of the parties and the nature of the subject matter so that the Court may evaluate these factors and ascertain the state having the most significant relationship to the issues before the Court. Therefore, it is obvious that a choice of law question may hardly, if ever, be appropriately resolved by this Court on demurrer. Indeed in many instances the trial court may be unable to rule on the question of whether a complaint has stated a cause of action until it can determine which substantive law governs the rights of the parties. In such a situation, only after hearing testimony can a court determine whether a cause of action is stated.
It would appear (but we do not decide) from the averments of Serio's bill of complaint that Louisiana law may be applicable in the instant case. The land in which the complainants and defendants hold interests as co-tenants is located in Louisiana. Lands in which Serio seeks to have assignments executed are located in Louisiana. The existing assignments are of record in Louisiana. The relationship of the litigants arises from the co-tenancy located in Louisiana. Any de facto operating agreement must be determined by looking at actions occurring in Louisiana and the "custom and usage" would certainly seem to require proof of Louisiana custom and usage to determine its substantive components. Nonetheless, the complaint alleged that all of the litigants are Mississippi residents. Therefore, although Louisiana law may apply to the instant case, such a determination cannot be fully and judiciously made without an evidentiary presentation. We are able to rule upon the pleadings and state with confidence that Mississippi courts have subject matter jurisdiction. Upon remand, the complainant Serio will be permitted to present evidence in support of the applicable law and all other pertinent factual issues.
Strenuously, the appellants argue that should we hold "that a Mississippi court may rightfully retain jurisdiction of this suit" venue lies before the Chancery Court of the First Judicial District of Hinds County, rather than in Adams County. In their brief they further assert that none of the individual defendants or corporate defendants are domiciled in, or residents of Adams County, and then they assert that "the cause of action is not alleged to have nor did it occur or accrue in Adams County, and defendant Dave Gammill is a resident citizen whose county of household and residence is in Hinds County, Mississippi." Therefore, the appellants argue that upon the undisputed facts defendant Gammill, pursuant to Mississippi Code Annotated § 11-11-3 (1972), has a statutory right to have the cause transferred to Hinds County.
*459 In his reply brief, appellee Serio makes no contention that the appellants are in error when they state that Serio did not allege that any of the parties were domiciled or resided in Adams County and neither do they take issue with the appellants' assertion that the cause of action was not charged to have occurred or accrued in Adams County. Serio takes the position that venue is a procedural question not to be decided on an interlocutory appeal, and he relies upon Atwell Transfer Co. v. Johnson, 239 Miss. 719, 124 So.2d 861 (1960). We think that, inasmuch as the matter is here on interlocutory appeal and having decided that the demurrers below were properly overruled, we should go further and hold that the chancellor was in error in refusing the motion of the appellants to transfer the cause to Hinds County. In affirming the chancellor's order overruling the demurrers, we are ruling on a matter not purely procedural and, in view of notions of judicial economy, we think the venue question should be settled here, rather than refuse to do so which could ultimately result in unnecessary expense and delay. The pleadings make no charge that any of the defendants (appellants) had any contact with Adams County. The cause of action asserted is based upon the defendants' inaction: that is, their failure to make assignments of oil and gas interests. Upon such a state of affairs, the defendants are entitled to transfer of venue as stated above. Robertson v. Evans, 400 So.2d 1214 (Miss. 1981), is an instance wherein we denied an interlocutory appeal, but nevertheless directed a chancellor to transfer the cause to the "proper circuit court and thus avoid a clear abuse of discretion on his part in proceeding to try" a personal injury tort action. In similar manner here we have effectuated a transfer of the present cause as to venue.
Accordingly, an order will be entered here directing transfer of the cause from the Chancery Court of Adams County to the Chancery Court of the First Judicial District of Hinds County. The clerk of the Chancery Court of Adams County will transmit all papers and pleadings in this cause to the Chancery Clerk in Hinds County, and the Chancery Court of the First Judicial District of Hinds County will proceed to hear this cause and enter its decree not inconsistent with this opinion.

PART II
ROBERTSON, Justice, for the Court:

A.
Barnett Serio, Sr. is not a bashful man. His complaint charges these defendants with fraud, breach of fiduciary duty and much more. That complaint demands temporary and permanent injunctive relief, an accounting, actual damages in the amount of $200,000.00, punitive damages in the amount of $1,500,000.00, plus attorneys fees and costs.
Squarely presented is the question of whether the chancery courts of this state have the power to assess punitive damages. To put the issue another way, does so much of Serio's complaint as asks punitive damages lie within the subject matter jurisdiction of the chancery court? We recognize that thirty years of clear decisions of this Court hold in the negative. On re-examination, we are convinced that neither history nor reason support such an approach. Accordingly, we now hold that the chancery courts of this state have the discretionary power to assess punitive damages according to the same substantive standards as apply in our circuit courts.
To be sure, it is necessary to deal with this issue in this case. Plaintiff's complaint demands punitive damages. Defendants interposed general and special demurrers, testing, inter alia, so much of the complaint as demanded punitive damages. The chancery court's decision overruling the demurrers necessarily allows the punitive damages demand to proceed. On interlocutory appeal to this Court, Defendants urge that the chancery court erred in its ruling, that the demurrers ought to have been sustained. Plaintiff Serio demands that the punitive damages issue remain in the case. The assessability of punitive damages in the chancery court necessarily is presented as an issue in the present posture of the case. It must be decided.

*460 B.

(1)
Punitive damages have been assessable under the positive remedial law of this state for years. See, e.g., Bell v. Morrison, 27 Miss. 68, 85-86 (1854). The accepted theory is that exemplary or punitive damages may be imposed as a punishment upon the wrongdoer, as a restraint on the transgressor. Yazoo & Miss. Valley Railroad Co. v. May, 104 Miss. 422, 61 So. 449 (1913). Such damages are assessed as a warning and example to deter not only the offender but others similarly situated from committing like offenses in the future. West Bros., Inc. v. Barefield, 239 Miss. 530, 542, 124 So.2d 474 (1960). What is otherwise a windfall is deemed necessarily granted to the plaintiff as his reward for public service in bringing the wrongdoer to account. Neal v. Newburger Co., 154 Miss. 691, 123 So. 861 (1929).
It follows from all of this, of course, that exemplary or punitive damages are awarded to plaintiff and are assessed against defendant only in extreme cases.[1] Plaintiff must prove a wrongful act intentionally performed or a gross disregard of the rights of plaintiff. Milner Hotels, Inc. v. Brent, 207 Miss. 892, 899, 43 So.2d 654 (1950). They are awarded upon proof of fraud or oppression. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226, 233 (Miss. 1962); T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972).
From what has been said above, it may readily be seen that the remedial sanction of an award of punitive damages is well recognized as a part of the public policy of this state. Regretably, there are individual and corporate citizens acting in this state who behave in such a way that the only appropriate judicial response is a stinging assessment of punitive damages. If this be an appropriate sanction in our law courts, it makes no sense that it should be beyond the power of our chancery courts. Our circuit courts certainly have no power to award damages unsupported by the public policy of this state. Conversely, there is no reason why our chancery courts should be denied the power to award any and all relief consistent with the public policy of this state.

(2)
Despite these considerations, this Court has for three decades held to the contrary. According to our decisions, the chancery courts of this state, absent statutory authorization, have heretofore been without power to award punitive damages. See, e.g., Wilborn v. Balfour, 218 Miss. 791, 804-807, 67 So.2d 857, 863 (1953); Capital Electric Power Ass'n. v. McGuffee, 226 Miss. 227, 246, 83 So.2d 837, 844 (1955); Monsanto Company v. Cochran, 254 Miss. 399, 404-405, 180 So.2d 624 (1965); Brent v. Cox, 246 So.2d 552, 553 (Miss. 1971); Bridges v. Land, 252 So.2d 209, 211 (Miss. 1971); Avant v. Whitten, 253 So.2d 394, 396 (Miss. 1971); Kemp v. Lake Serene Property Owners Ass'n, 256 So.2d 924, 926 (Miss. 1971); Carl v. Craft, 258 So.2d 237, 241, (Miss. 1972); Subscribers Casualty Reciprocal Exchange v. Totaro, 370 So.2d 1342 (Miss. 1979); Gulf S.S. Companies, etc. v. Polk, 370 So.2d 1348, 1351 (Miss. 1979) and Thompson v. First Mississippi National Bank, 427 So.2d 973 (Miss. 1983).
*461 Mississippi did not originate this limitation on the power of chancery courts. Without doubt both in England in days of old, and in the early equity courts of this country, notions of punitive damages were unheard of. 19 Am.Jur., Equity § 125, p. 125; 30 C.J.S. Equity § 72, pp. 938-939; Annot. Power of Equity Court to Award Exemplary or Punitive Damages, 48 A.L.R.2d 947, 949-955 (1956). Commencing only as recently as the Wilborn case in 1953, this Court has done little more than fall in line with the approach traditionally taken elsewhere.
As a necessary part of our reexamination of the rule of our prior cases, we have sought to identify its etiology. In this task, we have noted Justice Holmes' familiar reminder, albeit uttered in another context, that "a page of history is worth a volume of logic." New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963, 983 (1921).
Holmes' aphorism indeed suggests a trail. Along it we find the supposed justification for the rule. Summarizing, it is suggested that an award of punitive damages is wholly incompatible with the basic principles of equity. Monsanto Company v. Cochran, 254 Miss. at 405, 180 So.2d at 626. Quoting from a Texas case, this Court in Wilborn v. Balfour, has held that
"A court of equity is a court of conscience, but not a forum of vengence. It will make restitution but not reprisals. It will fill full the measure of compensation, but will not overflow it with vindictive damages." 218 Miss. at 805, 67 So.2d at 863.
Historically, this was the view courts of equity had toward the remedial device of punitive damages.
The logic of these views commends itself only to those with a perverted view of the remedy of punitive damages. Nothing in our law authorizes or allows punitive damages to the vengeful. There is no right to recover punitive damages. The award of such damages has always been discretionary. Awarding such damages to a plaintiff motivated by vindictiveness, a spirit of reprisal or greed would be an outrage. Neither courts of law nor courts of equity should give quarter to such unclean plaintiffs.
A bona fide demand for punitive damages appeals to the conscience of the court. Such damages ought to be awarded only where the plaintiff, at great trouble and personal expense, has rendered a public service by bringing the wrongdoer to account. The plaintiff in such cases is, and necessarily must be, acting as a private attorney general. It is difficult to image a more appropriate forum for the litigation of such volatile and sensitive matters than the chancery court.

(3)
A correct resort to history militates in favor of the decision we announce today. In the instant action, plaintiff Serio charges the Defendants with fraud. In this context, it is by no means irrelevant to note that claims of fraud historically were an important subject of the chancellor's jurisdiction. In England the chancellors regularly "interferred" in cases where, owing to the rigidity of the law, the enforcement of the strict legal right was clearly contrary to equity. Fraud was one of the chief grounds for this "interference". 1 Holdsworth, A History of English Law 454-459 (7th ed. 1956).
Couple this with more recent legal history wherein fraud has become a principal basis for an award of punitive damages. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226, 233 (Miss. 1962); Woodall v. Ross, 317 So.2d 892, 896 (Miss. 1975). We have here a case where the core charge made by Plaintiff Serio in his complaint is "collusive, deceitful and fraudulent conduct". Complete relief, Serio charges, requires temporary and permanent injunctive relief, an accounting, actual and punitive damages.[2] Our chancery courts delight to *462 do complete justice and not by halves. Griffith, Mississippi Chancery Practice, § 36 (2d Ed. 1950).
If Plaintiff can prove his charges, there is no sensible reason why all relief to which he may be entitled should not be afforded by a single court  the chancery court. Seen in this light, the case at bar is a proper one to reconsider Mississippi's limitation on the power of its chancery courts in proper cases to assess punitive damages. The power to grant complete relief in fraud cases should be vested in the chancellors within whose jurisdiction such cases historically were heard.

(4)
Other states have recognized there is no reason why courts of equity should be held without the power to award punitive damages in proper cases. Indiana: Hedworth v. Chapman, 135 Ind. App. 129, 192 N.E.2d 649, 650-651 (Ind. App. 1963); Iowa: Charles v. Epperson & Co., 258 Iowa 409, 137 N.W.2d 605, 617-618 (Iowa 1965); Tennessee: Bryson v. Bramlett, 204 Tenn. 347, 321 S.W.2d 555 (Tenn. 1958); Texas: International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 582-584 (Tex. 1963).
For example, the Supreme Court of Iowa in the Charles case cited above recognizes that "The modern trend is for an equity court to award ... (punitive) damages... ." 137 N.W.2d at 618. The Court continues
"No reason appears why recovery should be less or different in this case [a stockholder's derivative action traditionally of equity cognizance] than in one brought by the corporation at law. The reason to punish the wrongdoer and set an example is the same in one case as the other." 137 N.W.2d at 618.
The Court then concluded with this statement
"We hold that an equity court may in its discretion award exemplary damages for an intentional act of fraud." Id.

Turning to the State of Indiana, we find the Hedworth case cited above holding that the view adopted in this opinion, that punitive damages may be recovered in our chancery courts, "more fully carries out the theory of broad powers of the equity court." 192 N.E.2d at 651.

(5)
The rule in Mississippi that chancery courts have no power to award punitive damages may have been well established. Our recent cases, to be sure, have routinely cited the rule, as though there were no doubt concerning its viability. See, e.g., Carl v. Craft, 258 So.2d at 241; Subscribers Casualty Reciprocal Exchange v. Totaro, supra, 370 So.2d at 1342-1343. But matters have not always been thus.
In a 1911 case, the Court seemed to recognize that the power to award punitive damages was well within a chancellor's discretion. Hines v. Imperial Naval Store Co., 101 Miss. 802, 58 So. 650 (1911). In that case the Court stated
"The imposition of this punishment [an assessment of punitive damages] lies as completely in the discretion of the chancellor as it does in the jury in cases tried by a jury." 101 Miss. at 806, 58 So. 650.
*463 It is true that the Court in Hines held that plaintiff could not recover punitive damages. But the clearly stated basis for this holding was that the chancellor had not abused his discretion in denying punitive damages, not that the chancellor had no power to entertain the prayer for punitive damages in the first place.
That Hines was not an aberration is made clear by the 1929 decision in Neal v. Newburger Co., 154 Miss. 691, 123 So. 861 (1929). In Neal this Court remarked
"We think, under the evidence, that the chancellor would have been justified in awarding appellant punitive damages for the wrongs and injuries done her by appellees, if in his judgment he had seen fit to do so, ..." 154 Miss. at 699, 123 So. 861.
In the Neal case, however, as in Hines, the chancellor had declined to award punitive damages. This Court affirmed, citing Hines, and stating
"Where the trier of facts, whether it be judge or jury, in the exercise of discretion, has refused to allow punitive damages, such action is not reviewable on appeal, ..." 154 Miss. at 699, 123 So. 861.
The rigidity of the present Mississippi rule seems to be traceable to Monsanto Company v. Cochran, supra. In that case the Court completely miscites Neal and Hines for the proposition that when a party seeks relief in a court of equity, he thereby waives all claim to punitive damages. 254 Miss. at 405, 180 So.2d 624. Even so, there remained a touch of flexibility in the Mississippi approach when the Monsanto court acknowledged that there are a "few exceptions to the general rule that the courts of equity will not assess punitive damages." 254 Miss. at 404, 180 So.2d 624.
In short, the rule that courts of equity have no power to award punitive damages has existed in other states much longer than it has in Mississippi. Ironically, the rule became engraved in stone in this state about the time other states began to abolish it.
Invoking Holmes again, we are reminded that "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV." Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 469 (1897). The rule abandoned here has even less  centuries less  historical support. For we find no evidence of the rule in this state prior to 1953. See Wilborn v. Balfour, supra. That the rule has existed only 30 years, and not since the time of Henry IV, makes it no more palatable. It is still an anachronism.
Holmes continued to remind us that "It is still more revolting if the grounds upon which it laid down have vanished long since, and the rule simply persists from blind imitation of the past." Id. What would Holmes have said had he encountered the present rule and realized that the rule was never adopted in Mississippi until the reasons for its existence elsewhere had already vanished?

(6)
In summary, we find an absence of logic undergirding the rule we here abandon. We suggest that the rule, when adopted in this state only in 1953, was based on misunderstanding. Whatever logic the rule may ever have had has ceased to exist.
On its face the proposition that the circuit courts of this state have the power to assess punitive damages but that the chancery courts do not, makes no sense. The circuit courts of this state possess just as much of a conscience as do the chancery courts.[3] If, under the positive remedial law *464 of this state, on certain facts found punitive damages are assessable, it should be so in whatever court the action is heard.
Our chancellors are charged with granting that relief which equity and good conscience require. There will be rare cases where the conduct of the defendant is so outrageous that an assessment of punitive damages ought to be made. It would be peculiarly appropriate that a judge charged to act in accordance with equity and good conscience may not hear and adjudicate such claims. This is particularly so in this day when many feel that more than an occasional plaintiff recklessly demands punitive damages at law, hoping that he can move a jury to give him that windfall which in equity and good conscience he ought not to have.

C.
We hold that claims for punitive damages lie within the subject matter jurisdiction of the chancery courts of this state. We rely in no part upon notions of pendent jurisdiction en route. By way of analogy only, we note that today's holding is consistent with much that we have said in the past.
Claims for punitive damages have traditionally been thought of as legal not equitable claims. Yet our chancery courts have long been vested with a pendent jurisdiction to hear and adjudicate claims at law. Once chancery court subject matter jurisdiction otherwise attaches, our chancery courts are fully empowered to grant wholly "legal" relief. Burnett v. Bass, 152 Miss. 517, 521, 120 So. 456 (1929); McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 80, 38 So.2d 325 (1949); Duvall v. Duvall, 224 Miss. 546, 555, 80 So.2d 752 (1955); Shaw v. Owen Gin Co., 229 Miss. 126, 133, 90 So.2d 179 (1956); Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820, 826 (Miss. 1969). These legal claims are heard and adjudicated within the pendent subject matter jurisdiction of the chancery courts.
The rule of the cases just cited may be instructively examined here. For its logic is strongly analogous to the result decreed for here: The empowerment of the chancery courts to assess punitive damages where otherwise proper under the facts and the otherwise applicable positive remedial law. For example, in Shaw v. Owen Gin Co., supra, the Court stated
"It is settled beyond question in this jurisdiction that where a suit is brought in the chancery court and the court takes jurisdiction on any one ground of equity, it will proceed in the one suit to a complete adjudication and settlement of every one of all the several disputed questions materially involved in the entire transaction, awarding by a single comprehensive decree all appropriate remedies legal as well as equitable, although all the other questions involved would otherwise be purely of legal cognizance; and if the ground of equity fails under the proof the cause may be retained for a complete final decree on the remaining issues, although the latter present legal subjects only and the decree would cover only legal rights and grant none but legal remedies." 229 Miss. at 133, 90 So.2d at 181.
On what rationale might the assessment of punitive damages  purely legal relief  be excluded from this sweeping pronouncement? Nothing in Shaw v. Owen Gin Co., or any of the other cases which are to like effect, suggests in any way that the chancery courts, incident to adjudication of a controversy in part grounded in equity, ought at the same time adjudicate all legal claims except claims for punitive damages. We go the further step, however, and hold that notions of pendent jurisdiction are unnecessary to our decision. We hold that our chancery courts have actual, not just pendent, subject matter jurisdiction over claims for punitive damages.

*465 D.
In what has been said above, we have demonstrated several things. First, the Mississippi rule that chancery courts have no power to award punitive damages is inherently illogical. It is an aberration in the otherwise salutary doctrine of broad subject matter jurisdiction in the chancery courts. Second, any reason that historically may have supported the rule had evaporated long before the rule was ever adopted in Mississippi. But before our rule may be finally discarded, we must go further. Stare decisis demands that we demonstrate far more than the mere error of the rule under attack.
Here, we inquire whether there are citizens of our state who in good faith have relied upon the current rule in their plans and activities? Or, to put the question another way, would the change in rule proposed here substantially affect Mississippians in their primary decisions respecting human conduct? We recognize that if the answers of these questions be in the affirmative, such is a powerful consideration militating against abandonment of the rule existing heretofore.
The content of the law is readily available to the citizenry. It must be so if one is to order his life. People daily enter into complex commercial transactions assuming an existing state of the law. The rule of stare decisis exists to further private order. It is based upon the desirability of enabling people to plan their affairs at the level of primary private activity with the maximum attainable confidence that, if they comply with the law as it has theretofore been announced, or can fairly be expected to be announced thereafter, they will not become entangled in litigation. Hart and Sacks, The Legal Process 587 (Temp.Ed. 1958). Those laws that regulate and undergird primary private activity must be constant through time. Fuller, The Morality of Law 79-81 (Rev.Ed. 1969).
But not all rules of law are of this type. Specifically, rules that provide remedies do not serve the same function in ordering our society as to those rules regulating primary private activity, rules occasionally grossly known as "substantive rules of law". See Hart and Sacks, supra, at 576, 577. The rule that allows recovery of punitive damages is a remedial rule.
This point has been instructively addressed by Justice Harlan in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In that case, the Supreme Court overruled a century's worth of precedent which had denied recovery for wrongful death under the general maritime law. In discussing the stare decisis considerations present, Justice Harlan wrote
"The confidence of people in their ability to predict the legal consequences of their actions is vitally necessary to facilitate the planning of primary activity and to encourage the settlement of disputes without resort to the courts. However, that confidence is threatened least by the announcement of a new remedial rule of effectuate well-established primary rules of behavior". 398 U.S. at 403, 90 S.Ct. at 1789, 26 L.Ed.2d at 358.
The present decision likewise would little threaten public confidence.
We emphasize that the overruling of the cases designated at the outset of this opinion will work no change whatsoever in the rules of law regulating the private primary activity of Mississippians. The rule has long been well settled that punitive damages are recoverable where the defendant has done to the plaintiff such a wrong as to import insult, fraud, oppression or reckless disregard for the rights of plaintiff. T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972). Punitive damages have long been assessable upon a showing of willful and intentional wrong, or for such gross negligence and reckless conduct as is equivalent to such a wrong. Seals v. St. Regis Paper Co., 236 So.2d 388, 392 (Miss. 1970). Punitive damages equivalent to such a wrong. Seals v. St. Regis Paper Co., 236 So.2d 388, 392 (Miss. 1970). Punitive damages may be imposed for breach of contract where such breach is attended by intentional wrong, insult, *466 abuse, or such gross negligence as amounts an independent tort. Aetna Casualty and Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979). What conduct can get a citizen assessed with punitive damages is well established in this state, and this information is readily available even to Holmes' proverbial "bad man".[4] Nothing proposed here will change any of these primary rules which embody the standards according to which liability determinations will be made.
By the same token, the general guidelines regarding determination of the amount damages to be assessed in a given case are well established. By virtue of the many cases cited above, as well as numerous others in the reports of this Court, anyone contemplating the sort of vexatious conduct likely to get him sued for punitive damages, can readily ascertain the basis on which a punitive damages award may be calculated. For example, he knows that his net worth is a factor relevant to the amount of such an award. See Allen v. Ritter, 235 So.2d 253 (Miss. 1970).
In short, no citizen, no rational bad man, is going to engage in conduct which would subject him to an assessment of punitive damages in reliance upon the rule we abandon here. Such damagor knows well the rules according to which his liability may be assessed, and he had easy access to the rule explaining how punitive damages may be calculated. He is certainly not going to engage in his oppressive conduct on the off chance that his victim, by accident or out of exercise of a Hobson's choice; will sue him in chancery court rather than circuit court. Beyond that, of course, it goes without saying that, even if such a party consciously relied on the existing rule (which would not be rational), his conduct would be such that we should require little excuse for disappointing him in his expectations.[5] Suffice it to say that persons who engage in fraudulent or oppressive conduct are not favorites in the eyes of the law, and particularly not in our chancery courts. See Griffith, Mississippi Chancery Practice § 42 (2d ed. 1950).
The Hobson's choice referred to above in more than a few cases may be real. Regretably, there have been parties doing business in this state whose conduct justified imposition of both a prohibitory injunction and an assessment of punitive damages.[6] It would be outrageous to require the public spirited citizen willing to bring the wrongdoer to account to bring and prosecute two separate lawsuits. Yet such is what our present law requires.
Chief Justice Arthur Vanderbilt, one of the outstanding judicial scholars of this century, has summed up our considerations in his brillant dissenting opinion in Fox v. Snow, 6 N.J. 12, 76 A.2d 877 (1950).

*467 "The doctrine of stare decisis tends to produce certainty in our law, but it is important to realize that certainty per se is but a means to an end, and not an end in itself. Certainty is desirable only insofar as it operates to produce the maximum good and the minimum harm and thereby to advance justice .. . The question whether the doctrine of stare decisis should be adhered to ... is always a choice between relative evils. When it appears that the evil resulting from a continuation of the accepted rule must be productive of greater mischief to the community than can possibly ensue from disregarding the previous adjudications on the subject, courts have frequently and wisely departed from precedent." 76 A.2d 883-884.
The evils attendant upon a continuation of the old rule are several, as explained above. That a chancery court has no power to assess punitive damages necessitates that some public interest lawsuits be brought in two separate courts, in effect, tried twice. It leads to the cumbersome and unwieldly procedure of the Reed case cited above. At worst, it could well result in a guilty party escaping justice, undeterred from a continuation of his harmful ways. In addition, the current rule promotes forum shopping on the part of plaintiffs and unseemly tactical maneuvering on the part of defendants. Finally, the rule is irrational. Irrationality in the law is a source of public disrespect.
In conclusion, we invoke once again the wise counsel of Justice Harlan in the Moragne case.
"A judicious reconsideration of precedent cannot be as threatening to public faith in the judiciary as continued adherence to a rule unjustified in reason, which produces different results for breaches of duty in situations that cannot be differentiated in policy. Respect for the process of adjudication should be enhanced, not diminished by our ruling today." 398 U.S. at 405, 90 S.Ct. at 1790, 26 L.Ed.2d at 359.
Respect for the law should be enhanced by our decision today.

E.
All before whose eyes these pages may come are enjoined to discern not so much as a whisper of a suggestion that punitive damages in fact ought to be assessed in this case  or for that matter, that any other relief should be granted. Such are for trial on the merits.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED TO CHANCERY COURT OF FIRST JUDICIAL DISTRICT OF HINDS COUNTY, MISSISSIPPI.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur as to Part I.
PATTERSON, C.J., and ROY NOBLE LEE, BOWLING, DAN M. LEE and PRATHER, JJ., concur as to Part II.
BROOM and WALKER, P.JJ., and HAWKINS, J., dissent as to Part II.
BROOM, Presiding Justice, dissenting as to Part II:
Punitive damages are not a means of compensating a litigant for losses actually suffered. Rather, the awarding of punitive damages is a means of punishing the wrongdoer as a sort of retribution calculated to discourage him from repeating the same transgression, and deter others from engaging in similar conduct. Punitive damages are quasi-criminal penalties.
In this nation for some time (and more recently in this state) there is a trend away from the jury system as a vital part of our machinery used in the quest for justice. We have taken too lightly that part of the Bill of Rights contained in Article 3, § 31 of the Mississippi Constitution, which provides that the "right of trial by jury shall remain inviolate ... in all civil suits tried in the circuit and chancery court ...". See also, Amendment VII, United States Constitution. Astute practitioners bring in chancery courts any number of actions having features of accountings, attachments, etc., and thereby avoid trial by jury as to important *468 issues otherwise for jury resolution. Also, there is a trend toward a unified (centrally controlled) court system in which law courts and equity courts would be swallowed up into one court  no longer would "circuit" and "chancery" courts be in existence.
This short dissent is not the proper forum in which to debate whether the jury is needed in meting out punishment or whether circuit and chancery courts should be combined. Perhaps persuasive arguments based mainly on judicial economy can be made for (1) diminished use of the jury system, and (2) combining law and equity courts. Here we are changing our rules after suit was instituted by complainants charged with notice that, according to established law, punitive damages can be awarded only by jury verdict. It's like suddenly in a football game allowing a "fifth down" to the team which has failed to cross the goal-line in four attempts.
Serious procedural problems can be foreseen which make the majority action fraught with peril in future cases. Due to the very nature of chancery practice, chancellors may be flooded with an avalanche of claims for punitive damages which will obscure the main thrust of chancery litigation.
My view is that such changes should not be wrought by judicial fiat of this Court without allowing the bench, bar and citizenry of the state to present their views by some manner or means. Action which results in abridgement of the sacred right to jury trial is more suitably accomplished by our lawmakers: the members of the Mississippi Legislature.
Accordingly, I cannot concur as to PART II of the majority opinion dealing with punitive damages.
WALKER, P.J., and HAWKINS, J., join in this dissent.
NOTES
[1] The policy underlying our rule on award of punitive damages obviously contemplates rewarding public spirited plaintiffs who will endure the slings and arrows of litigation to bring a wrongdoer to account. As fate would have it, more than one or two plaintiffs demanding punitive damages in recent years have not been actuated by any public spirit. Pursuit of filthy lucre plays its unseemly role. That we believe the power to award punitive damages should be recognized in the chancery courts in no way implies any view that we wish to encourage a wholescale filing of punitive damage actions. If anything, in the present "atmosphere", the standards for award of punitive damages should be restricted  to assure that such damages are given only to those truly public spirited plaintiffs. We would emphasize that punitive damages are not favored in the law and are to be allowed only with caution and within narrow limits. Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239, 247 (Miss. 1977). Suffice it to say that every attorney filing a complaint demanding punitive damages does so subject to the provisions of Rule 11 of the Mississippi Rules of Civil Procedure, to-wit, his signature constitutes his certificate "that to the best of his knowledge, information, and belief there is good ground to support it [the claim for punitive damages]".
[2] Under our current case law, Serio "by choosing the chancery court for his forum, ... forewent whatever right he had as to punitive damages and attorneys fees". Subscribers Casualty Reciprocal Exchange v. Totaro, 370 So.2d 1342, 1343 (Miss. 1979). If Serio had brought his action in circuit court, all save the punitive damages issue would have been transferred to chancery, thus invoking the cumbersome procedure of M.T. Reed Construction Co. v. Nicholas Acoustics & Specialty Co., 379 So.2d 308 (Miss. 1980) and 387 So.2d 98 (Miss. 1980).

In the Reed case, the Court "tolerated" a procedure under which an action asserting grounds in equity but also claiming punitive damages was originally brought in the circuit court. The circuit court transferred the substance of the case to chancery court, but retained jurisdiction over the punitive damages issue and stayed all proceedings in connection therewith until the remainder of the case had been adjudicated in the chancery court. Once the plaintiff obtained a favorable decree in the chancery court, the circuit court reactivated the cause and submitted the punitive damages issue to a jury. The inefficiency and general undesirability of the Reed procedure, we trust, is obvious.
By our holding today, we avoid both the intolerable waiver result mandated by Totaro and the inefficiency and waste of judicial resources allowed in Reed.
[3] Equitable principles are not foreign to the process of adjudication in our circuit courts. Indeed, it may be fairly said that the circuit courts of this state have for years been empowered to act upon equitable principles where such was appropriate. See, e.g., Dilworth v. Federal Reserve Bank of St. Louis, 170 Miss. 373, 388, 150 So. 821, 824 (1933) (circuit court has power to administer equity); United States Fidelity and Guaranty Co. v. State For Use of Stringfellow, 254 Miss. 812, 821, 182 So.2d 919, 924 (1966) (circuit court enforced equitable principle that judgment creditor of an indemnitee may recover for debt due from the indemnitor to the indemnitee under the indemnifying contract of insurance; affirmed on authority of section 147); Chatham v. Johnson, 195 So.2d 62, 64-65 (Miss. 1967) (application for writ of mandamus addressed to circuit court to be considered according to "equitable principles"); State v. Maples, 402 So.2d 350, 351 (Miss. 1981) (circuit court's issuance of writ of prohibition "governed by equitable principles that there is no wrong without a remedy").
[4] In his classic essay, The Path of the Law, 10 Harv.L.Rev. 457 (1897) Holmes wrote

"If you want to know the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict, not as a good one, who finds his reasons for conduct, whether inside the law or outside of it, in the vaguer sanctions of conscience." 10 Harv.L.Rev. at 459.
Holmes would treat a bad man as being just as entitled to know in advance the rules by which his conduct will be judged as a good man. Predictability is important to all, good or bad (or somewhere in between) as
"a bad man has as much reason as a good one for wishing to avoid an encounter with the public force,... . A man who cares nothing for an ethical rule which is believed and practiced by his neighbors is likely nevertheless to care a good deal to avoid being made to pay money, and will want to keep out of jail if he can." 10 Harv.L.Rev. at 459.
For the reasons explained above, the bad man has already the means of knowing in advance what conduct will subject him to an assessment of punitive damages and how those damages may be calculated.
[5] However useful Holmes' bad man theory is an understanding in clarifying the role of law in our society, we do not embrace all of its implications. Suffice it to say that a bad man offended by the change of rule announced here is in no way entitled to the same consideration as citizens who have in complete good faith planned their affairs in substantial reliance upon an existing state of the law.
[6] As explained above, Plaintiff Serio has charged fraud and demands injunctive relief, an accounting, actual and punitive damages.